306 So.2d 675 (1975)
STATE of Louisiana, Appellee,
v.
Daniel PRYOR, Jr., Appellant.
No. 55187.
Supreme Court of Louisiana.
January 20, 1975.
*676 J. Edgerton Pierson, Jr., Blanchard, Walker, O'Quin & Roberts, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Paul J. Carmouche, Asst. Dist. Atty., for appellee.
TATE, Justice.
The defendant was convicted of simple burglary, La.R.S. 14:62, and sentenced to 7½ years at hard labor. The single error urged upon his appeal concerns the denial of his motion for a directed verdict of not guilty.
La.C.Cr.P. art. 778 provides: "In a jury trial the court may direct a verdict of not guilty of one or more of the offenses charged, on its own motion or on that of a defendant, after the close of the state's evidence or of all of the evidence, if the evidence is insufficient to sustain a conviction. * * *." The motion should be sustained when no evidence at all has been introduced which proves the crime charged or an essential element of it. State v. Patterson, La., 295 So.2d 792 (1974); State v. Douglas, La., 278 So.2d 485 (1973).
The issue here raised is whether any evidence was introduced to prove that it was the defendant Pryor who committed the unauthorized entry upon which the burglary charge is based.
The burglary of the grocery store was committed during the nighttime hours. In addition to other merchandise, some watches and money were stolen from a small filing cabinet. The only evidence introduced which connects the defendant with this crime is that a latent fingerprint which matched that of one of his fingers was found upon the filing cabinet on the morning after the burglary.
The defendant Pryor contends that, while this fingerprint may prove he touched the filing cabinet at some time in the past, it does not prove that he was the person who made the unauthorized entry and theft on the date in question. Pryor points out that he was a former employee and an occasional customer of the store.
Burglary is "the unauthorized entering" of any structure with intent to commit a felony or theft therein. La.R.S. 14:60, 14:62. The proof undeniably shows that someone committed an unauthorized entry for such purpose. But, the defendant contends, it does not show that he did.
In order to negative an authorized entry by reason of which the defendant's fingerprint was found on the filing cabinet, the state relies upon the testimony of the store's proprietor.
The filing cabinet was behind a counter across the rear of the premises. The proprietor testified that no customer was ever permitted behind the counter and that the cabinet was beyond reach of any customer in front of the counter.
The proprietor further testified that, as "around the time of the burglary", the defendant would have no business to go behind the counter and had never been there to his knowledge and, further, that "no one is allowed behind that counter". Tr. 21-22. He also testified that he was always present when the store was open and that he always closed the store when he left, even temporarily.
The state produced no direct evidence of the defendant's commission of the burglary. It relies upon circumstantial evidence: the defendant's fingerprint found on the filing cabinet, and the store proprietor's testimony, which tends to exclude the defendant's authorized entry near the burglarized filing cabinet, at least as of or near the time of the 1974 burglary.
*677 La.R.S. 15:438 provides: "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence". The issue of whether every reasonable hypothesis of innocence has been excluded presents a question of law. State v. Heymann, 256 La. 18, 235 So.2d 78 (1970); State v. Linkletter and Soldani, 239 La. 1000, 120 So.2d 835 (1960); State v. LaBorde, 234 La. 28, 99 So.2d 11 (1958).
The defendant does not contest the admissibility or reliability of fingerprint evidence as proof of identity. See Annotation, EvidenceFinger, Palm, or Footprint, 28 A.L.R.2d 1115 (1953). See also Moenssens, Moses, and Inbau, Scientific Evidence in Criminal Cases, Section 7.09 (1973) and Wharton's Criminal Evidence, Sections 83 and 192 (13th ed., Torcia ed. 1972).
He forcefully argues, however, that the proof of his fingerprint, standing by itself, does not constitute evidence of his unauthorized burglary, even considered in the light of the proprietor's testimony. He suggests, for instance, that the evidence does not directly exclude, as a reasonable possibility, that the fingerprint had been made when the defendant was employed by the proprietor for four days some five years prior to the burglary.[1]
The defendant relies upon decisions such as: United States v. Collon, 426 F.2d 939 (C.A.6, 1970); Borum v. United States, 127 U.S.App.D.C. 48, 380 F.2d 595 (1967); Cooper v. United States, 94 U.S.App.D.C. 343, 218 F.2d 39 (1954); Solis v. People, Colo., 485 P.2d 903 (1971); Musgrove v. State, 3 Md.App. 54, 237 A.2d 804 (1968); Ivey v. State, 176 So.2d 611 (Fla.App. 1965).
The thrust of these decisions is that the accused's fingerprint found at the scene of an unauthorized entry or upon some object connected with the crime is, by itself, not evidence that the accused committed the offense, if the evidence permits a reasonable inference that the fingerprint may have been placed there at another time than the offense. Some of the decisions also cited testimony in the case that the fingerprints there involved may have been on the objects indefinitely.
In all of the cited decisions the conviction was reversed, where the sole evidence of the accused's participation in the crime was a fingerprint. One of the decisions points out that, under the circumstances shown, "* * * to allow this conviction to stand would be to hold that anyone who touches anything which is found later at the scene of a crime may be convicted * * *." Borum v. United States, at 380 F.2d 597.
An authoritative work on the subject summarizes the jurisprudence on this issue. Moenssens, Fingerprints and the Law 118-25 (1969) (Inbau Law Enforcement Series). The work notes, pp. 118-19: "To support a conviction based solely or primarily on fingerprint evidence, it must be shown that the defendant's fingerprints were found under such circumstances as to exclude any reasonable possibility of consistency with innocence. If fingerprints of the accused are found at the place where a crime has been committed and in such manner as to exclude every reasonable hypothesis save that the fingerprints were impressed at the time that the crime was committed, then a conviction on the sole evidence of such fingerprints may be sustained." Again, p. 120: "The finding of a person's fingerprints at crime scenes is not *678 proof of his guilt unless circumstances are such that the fingerprints could only have been impressed there at the time when the crime was committed."
We have nevertheless concluded that, under the circumstances of this case, the fingerprint found on the filing cabinet constitutes some evidence from which a jury might draw a reasonable inference that the defendant had beyond a reasonable doubt committed the unauthorized entry at the time of the burglary. The evidence presented by the state reasonably excludes, if accepted by the jury, the hypothesis that the print was impressed at a time other than that of the crime.
In the first place, the state reasonably negatived any innocent explanation for the fingerprint on the filing cabinet having been made during the months immediately preceding and surrounding the burglary. See, e. g., Stevenson v. United States, 127 U.S.App.D.C. 43, 380 F.2d 590 (1967).
In the second place, we cannot say that, under the present record, it was impermissible for the jury to infer that the latent fingerprint found on the cabinet had been made recently (rather than, say, five years before at the time when the accused had worked as an employee of the store). See, e. g., Flaudung v. State, 4 Md.App. 664, 244 A.2d 909 (1968).
The evidence before the present jury is: Fingerprints are "moisture and contents of a skin left on a surface somewhere." Tr. 32. The fingerprint officer dusted exposed surfaces with graphite powder and found, he testified, just two latent fingerprints the one on the filing cabinet (identified as the defendant's), and another on the front-door's glass pane broken to gain entry (which latter print was never identified).
The length of time latent fingerprints will remain on objects varies. It is affected by many factors, including atmosphere, surface, amount of skin perspiration, and subsequent exposure. Theoretically, under ideal conditions, fingerprints may remain indefinitely. Actually their longevity is shortened by the factors noted and is difficult to ascertain.
See: Moenssens, Fingerprints and the Law 26-27 (1969); Scott, Fingerprint Mechanics 37-40 (1951). Cf., Beasley v. State, 81 Nev. 431, 404 P.2d 911 (1965) and Graves v. State, 119 Tex.Cr.R. 68, 43 So.2d 953 (1931).
Usually, however, fingerprints may be developed by powdering (as was done here) only during the first week or so, depending upon temperature and humidity, due to the evaporation of the water content. Moenssens, cited above, at 26-27; Moenssens, Fingerprint Techniques 130-33 (1971) (Inbau Law Enforcement Series).
Since the jury's commonsense inference that the present fingerprints were recently made is thus not mere speculation but is reasonably based, we are unable to find a total lack of evidence such as is required before granting a directed motion or acquittal. The recency of the prints lifted by graphite powder, together with the other evidence reasonably excluding an innocent explanation for their recent presence at the scene of the burglary, constitutes evidence from which the jury could reasonably find the accused guilty of the burglary in question.
We therefore find no error in the denial of the directed verdict.
Like the trial court, we are concerned that the state "just about barely made out its case." Tr. 60. While it may be reasonable to suspect former employees of a store burglary, such mere suspicion plus their unexplained fingerprint presents a slender basis for conviction.
Further, the testimony of the investigating officer that the defendant's fingerprints were compared with those found at the burglary scene because of the officer's discussion with informants, Tr. 57, suggests that the state had more basis than the fingerprint upon which to charge the defendant. (It also comes uncomfortably close to so suggesting hearsay report to the *679 jury as a basis for the defendant's guilt.) If admissible, introduction of this further factual evidence by the state could have easily avoided the substantial risk of reversal the state took by presenting so slender a case.
Nevertheless, for the reasons stated, we cannot say that there is a total lack of evidence such as would justify reversing the trial court's denial of a directed verdict, which is the only issue before us.
Accordingly, the conviction and sentence are affirmed.
Affirmed.
NOTES
[1] The defendant points out that the evidence does not clearly indicate that the filing cabinet had been behind the counter for any length of time. He argues that, possibly, the defendant's fingerprint had been placed on it if it had been located elsewhere in the store or, even, before it had been brought into the store. While probably the state should have more explicitly shown this, nevertheless we find a fair inference from the proprietor's testimony to be that the filing cabinet had been in its present location for at least several months.