467 So.2d 858 (1985)
STATE of Louisiana, Appellee,
v.
Oliver GRISSOM, Appellant.
No. 16772-KA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1985.
*859 Hunter & Scott by Louis G. Scott, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Johnny Parkerson, Dist. Atty. by Michael J. Fontenot, Asst. Dist. Atty., Monroe, for appellee.
Before JASPER E. JONES, FRED W. JONES, Jr., and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
The defendant, Oliver Grissom, was found guilty by a jury of aggravated rape (La.R.S. 14:42). The mandatory sentence of life imprisonment at hard labor without benefit of parole was imposed. The defendant appealed, relying for reversal of his conviction upon five assignments of error, one of which was abandoned.
In the summer of 1982, the victim, aged 75 (hereinafter referred to as Mary), was remodeling her house in anticipation of her sister, aged 77 (hereinafter referred to as Maureen), moving in with her. Mary had the inside of the house painted and had a storage room that was part of the detached garage converted to a laundry room. An electrician ran the necessary wires to the storage room and a plumbing crew laid a drainage line from the storage room to the sewer system.
On July 17, 1982, one week after Maureen had moved in, the sisters were asleep in a single bedroom of the small wood frame house. In the early hours of the morning Maureen was awakened by sounds emanating from the den. Maureen aroused Mary who went to investigate, thinking that her sister was merely hearing the noises of an unfamiliar house. Upon reaching the den, Mary noticed the figure of a black man stepping out from behind the venetian blinds. Mary screamed. Maureen rushed to the den. Both sisters were pushed to the den floor and held there by means of two sofa cushions.
The assailant, described by Maureen as a young, strong black man around 25-30 years old, began requesting valuables from the ladies. Maureen offered to show him where the valuables were located if he would let them up. After giving the assailant some cash from a purse in the closet, Maureen was locked in the closet.
The assailant then returned to the den where Mary was still on the floor. The assailant removed her pajama bottoms, exposed his penis and lay on top of her. In an effort to defend herself, she twisted his penis.
The assailant then took her to the bedroom and demanded diamonds. After she showed him where they were kept, he put her on the bed on her back and again lay on top of her. He asked her for some "lubricant" and she told him where there was some "Vaseline." She then felt herself "pretty well lathered." Mary did not remember anything further until the assailant was tying her feet together and preparing to leave. She noticed that day was breaking as he left. She heard him rip the telephone out and her sister's muffled voice from the closet. After he left, Mary *860 let Maureen out of the closet and Maureen ran to a neighbor's house to call the police.
Mary and Maureen were transported to a hospital emergency room where the doctor on duty examined them. Mary had ten broken ribs, contusions of the right eye, forehead, nose, chin, left clavicle, and lower lip; a hematoma beneath her tongue; and bruises on her left thigh and left breast. The doctor also did a rape kit analysis on her and found areas of abrasion and superficial tears of the labia minora.
After interviewing the sisters, the police were struck by the fact that the assailant had asked them where their car was. This led the officers to believe that the assailant had been to the house before, since Mary's blue Buick was on loan to her nephew the night the intruder entered the house.
After interviewing the electrician and the painter, the police questioned the plumber who had laid the drain pipe. One of the members of the plumbing crew was defendant Grissom. Grissom was subsequently arrested for an aggravated burglary that had occurred on July 27, 1982, and was later indicted in this case.

ASSIGNMENTS OF ERROR NOS. 1, 2 and 3
These assignments deal with sufficiency of evidence and burden of proof.
In this case defendant was convicted of aggravated rape. La.R.S. 14:41 provides in pertinent part:
Rape is the act of anal or vaginal sexual intercourse with a male or female person who is not the spouse of the offender, committed without the person's lawful consent.
Emission is not necessary; and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime.
The pertinent part of La.R.S. 14:42 reads:
A. Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
The two issues raised by these three assignments are: (1) whether the evidence was sufficient to prove that the defendant was the assailant; and (2) whether the evidence was sufficient to prove the assailant penetrated the victim's vagina.

IDENTITY
The only identity evidence adduced in the trial was circumstantial, therefore R.S. 15:438 is applicable: "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." Likewise, the constitutional standard for sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), must be met. In State v. Jones, 451 So.2d 35, 39-40 (La.App. 2d Cir.1984), we said:
"An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational jury to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime."
Maureen described the assailant as a very strong black man of about 25-30 years old. Mary established the assailant's height by saying: "... I sort of measured him, he seemed to just fit well under the screen, that blind, and when he ... grabbed me ... I remember feeling my face against his chest, which wouldn't necessarily mean he was a tall man, but that he'd be a broad man ..." Mary further *861 established that he was "a younger man... younger than I am. But something about the force of his arms and all, I just never felt such a tight vise." The jury had an opportunity to view the defendant in the courtroom and see that his build was consistent with the sisters' testimony.
The police lifted two latent prints from the scene of the crimea palm print from the inside window sill and a fingerprint from the inside of the screen through which the assailant entered. An expert in fingerprint comparison showed the jury enlargements of these latent prints together with enlargements of known prints of the defendant and explained to the jury how he identified the latent prints as belonging to the defendant. The jury had an opportunity to weigh the fingerprint evidence itself, not just the opinion of the expert.
The defense attempted to rebut the state's identity evidence three ways. First, the defense argued that the defendant was served coffee on the patio directly adjacent to the den window entered by the assailant and he could have touched the window at that time. However, the state refuted this theory by the testimony of Grissom's stepfather, the foreman of the plumbing crew, who said no member of his crew went through the window or entered the house. Also, evidence was presented that the screen had not been removed prior to the assailant's entry and that the screen was in fact at least partially stuck shut by paint. Furthermore, the fingerprint was next to a slit made by the assailant.
The second defense argument is that, according to testimony from a crime lab expert, a hair in the rape kit, labeled as having been taken from the victim's back, more likely than not originated from a black person other than the defendant. The state suggested that the hair might have been picked up at the hospital since the emergency room did employ some black workers. Furthermore, the state pointed out that the victim's pajama top was not removed during the assault.
Finally, the defense provided an alibi witness who testified that the defendant was with her the whole night during which the incident took place. The defense further pointed out that the witness works in the police jury office in close contact with the district attorney's office, and that she is married to another man, both indicating that she was telling the truth. The jury had the opportunity to view the witness and make its own credibility assessment. We cannot say that a rational jury would not have disbelieved this witness in light of the other evidence.
Fingerprint evidence has been upheld as sufficient to sustain a conviction. See State v. Davenport, 445 So.2d 1190 (La. 1984) and State v. Pryor, 306 So.2d 675 (La.1975).
In this case the jury apparently believed that the fingerprint was not made while the defendant was working at the residence. That was its prerogative.
The evidence was sufficient for a rational jury to conclude beyond a reasonable doubt that the defendant was the assailant.

PENETRATION
The only evidence offered on the subject of penetration was the testimony of the victim and that of the doctor who examined her in the emergency room.
The victim testified:
"I'm sure he felt he couldn't make ... whatever you say, penetration, and he got up for ... he said something about lubricant, and I must have directed him to the bathroom, because I was so aware of injury. And then when he came back, he pretty well lathered my body up with... I'm sure it was Vaseline.... Then, I don't remember a thing after that ..."
Later, when asked whether he was trying to make penetration, she responded: "Trying to." When asked whether he made penetration, she said: "The attempt was made of that, I'm sure." Finally, the prosecutor asked: "Do you actually know whether penetration was made?" To this she rejoined: "I ... I ... I don't know, it was such a horrible thing.
The examining physician found areas of abrasion and superficial tears of the labia *862 minora. He could not say that this was evidence of intercourse, but he did say, "I was under the impression it was attempted, in many directions." He stated that he found no injuries in the vagina, but that all the injuries were on the outside or entrance to the vagina.
The examining physician completed the rape kit which required fluids from the vagina as well as a vaginal wash. The crime lab was unable to detect any trace of seminal fluid or spermatoza.
The state relies on the case of State v. Prestridge, 399 So.2d 564 (La.1981). The facts in Prestridge are distinguishable. The victim in Prestridge testified that the assailant's penis went in "a little bit." In the case before us the record is devoid of evidence that any penetration, however slight, was made. Consequently, we find that the evidence was insufficient for a rational trier of fact to find that there was penetration beyond a reasonable doubt.
The evidence in this case is less incriminating than in State v. Alexander, 437 So.2d 991 (La.App. 3d Cir.1983), where a conviction of aggravated rape was set aside and a conviction for attempted aggravated rape was substituted. We find that the record establishes sufficient evidence to convict the defendant of the lesser included offense of attempted aggravated rape. State v. Parish, 405 So.2d 1080 (La.1981); State v. Byrd, 385 So.2d 248 (La.1980); R.S. 14:5.

ASSIGNMENT OF ERROR NO. 4
The defendant argues that testimony from two detectives concerning an oral statement given in conjunction with a written statement was improperly admitted by the trial court. The evidence was that the defendant had not told the police that he was at the house of his alibi witness on the night of the offense, but they thought he stated something about being at his mother's house.
Defendant argues: (1) the officers could not be expected to remember an oral statement that occurred more than two years prior to trial; (2) the statement should be used in its entirety pursuant to R.S. 15:450; (3) the statement was not mentioned in the state's answer to the defendant's discovery motion; and (4) the statement was not within the defendant's stipulation relieving the state of the requirement of establishing that the statements were freely and voluntarily given.
Defendant's first argument is without merit since it is the function of the jury to determine whether the officers would remember such a statement. The second argument is likewise meritless in that the record does not reflect that any part of the defendant's statement was omitted other than that which was excised as part of the stipulation made by defense counsel. Defendant's final two arguments were waived by lack of contemporaneous objection. State v. Sanders, 431 So.2d 833 (La.App. 2d Cir.1983) and State v. Quimby, 419 So.2d 951 (La.1982). Furthermore, the record establishes that the statement was freely and voluntarily given.

DECREE
For the foregoing reasons, we set aside the conviction and sentence for aggravated rape and remand with instructions to the trial court to enter a judgment of conviction of attempted aggravated rape and to impose a sentence for that crime.