NORRIS, Judge.
The defendant, Vincent E. Johnson, appeals his conviction for simple burglary of an inhabited dwelling, LSA-R.S. 14:62.2,[1] *880 following a jury trial and a verdict of guilty. On appeal, he contests the sufficiency of the evidence and the admissibility of a fingerprint comparison card. For the reasons expressed, we affirm.
The burglary occurred on June 27, 1984. The victim, Mr. Drumgo, returned to his house at 407 Benton Avenue in Monroe at about 12:30 p.m. when he discovered that a large plexiglass window pane had been removed from his back door. The intruder had taken some food items and a small amount of cash; he left a screwdriver on the kitchen stove.
Mr. Drumgo had installed the plexiglass only three or four weeks before this incident. Having been burglarized numerous times by intruders who had always broken his back door glass, he finally purchased the unbreakable plexiglass pane which was supported in place by wooden strips. The perpetrator of the June 27 burglary had apparently pried away the strips with a metal object, removed the pane and placed it on the ground next to the back steps. Detective Brown of the Monroe Police Department dusted the pane and was able to lift two latent fingerprints from it, one from the inside and one from the outside. No other prints, however, were taken at the scene, and the screwdriver was discarded.
Mr. Drumgo then pointed out to the detectives a house where he thought a suspect lived. Using this address, the police obtained the defendant’s name and pulled his record. Defendant had a fingerprint card on file, with prints that matched the latent prints lifted from the plexiglass pane. On the basis of this identification, the defendant was arrested and charged with the instant offense.
ASSIGNMENT NO. 1
Johnson claims the verdict was contrary to the law and evidence and that the state failed in its burden of proof. In a short “Per Curiam to Assignment of Error No. 1,” the trial court asserted that since the defendant did not move for a post-verdict judgment of acquittal under LSA-C. Cr.P. art. 821,[2] he is now precluded from raising as error the sufficiency of the evidence. In support, he cites State v. Johnson, 389 So.2d 372 (La.1980). The Johnson case, however, does not specifically apply to verdicts; its holding is confined to contemporaneous objections to errors during trial. See LSA-C.Cr.P. art. 841. There are a few cases from another circuit that arguably hold that an article 821 motion is a prerequisite to attacking the sufficiency of evidence on appeal. See, e.g., State v. Kor-man, 439 So.2d 1099 (La.App. 1st Cir.1983). The same court, however, has more recently held that article 821 states the standard of review, and that sufficiency of evidence is a proper issue on appeal regardless of the procedural vehicle by which it is raised. State v. Sterling, 462 So.2d 290 (La.App. 1st Cir.1984), writ denied 466. So.2d 466 *881 (La.1985); State v. Walker, 447 So.2d 54 (La.App. 1st Cir.1984). We adopt the latter approach because it does not suppress the defendant’s right of review under LSA-Const. art. 5 § 10(B) and because article 821 does not by its own terms preclude appellate review.[3] Thus we consider it proper to address Johnson’s first assignment of error.
The standard of review is announced in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We must determine whether, “after reviewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Johnson admits in brief that the state proved a burglary; he only questions his identification as the burglar.
The only evidence linking Johnson to the crime is the fingerprints on the plexiglass. Johnson cannot seriously contest the value of fingerprints in establishing his identity. The uniqueness of fingerprints, when properly obtained and expertly analyzed, makes them sufficient to uphold a conviction. State v. Grissom, 467 So.2d 858 (La.App.2d Cir.1985); State v. Pryor, 306 So.2d 675 (La.1975). In Pryor, the court said,
To support a conviction based solely or primarily on fingerprint evidence, it must be shown that the defendant’s fingerprints were found under such circumstances as to exclude any reasonable possibility of consistency with innocence. If fingerprints of the accused are found at the place where a crime has been committed and in such manner as to exclude every reasonable hypothesis save that the fingerprints were impressed at the time that the crime was committed, then a conviction on the sole evidence of such fingerprints may be sustained ... The finding of a person’s fingerprints at crime scenes is not proof of his guilt unless circumstances are such that the fingerprints could only have been impressed there at the time when the crime was committed.
306 So.2d at 677-78 (quoting from Moenssens, Fingerprints and the Law, 120 [Inbau Law Enforcement Series 1969]).
Johnson asserts, however, that the circumstances do not necessitate a finding that he made the prints when the crime was alleged to havé occurred. He paid four or five visits to Mr. Drumgo’s house in 1982 when his friend Samuel Brown was living there (Mr. Drumgo was Brown’s step-father at the time). R. p. 218. Mr. Drumgo confirmed that Mrs. Brown and her two sons had lived there between late 1980 and October of 1982. Since then, however, he had replaced- the glass window several times, most recently in early June 1984, because it had been broken in a series of four to six burglaries in a span of six months. - The plexiglass' from which these prints were lifted had been installed only a few weeks earlier and was sealed before installation; thus the prints found on it could not be any older. Furthermore, one print was taken from the interior of the glass. This, together with Mr. Drumgo’s assertion that Johnson had not been in his house and that no one used- the back door but him, is sufficient to place the making of the prints on June 27, 1984 and not 1982. These circumstances;- together with the positive fingerprint proof exclude any reasonable hypothesis consistent with innocence. Utilizing the Pryor standard in conjunction with the Jackson v. Virginia standard, we conclude that a rational trier of fact could have found the state proved the essential elements of the crime beyond a reasonable doubt.
Johnson next advances an innovative hypothesis based on Mr. Drumgo’s unfortunate sequence of prior burglaries. Every prior burglary consisted of breaking the back door window pane and stealing canned meat and pocket change. This, Johnson says, makes them “signature” crimes of which' the June 27 incident* was just another example. Thus he argues it is more reasonable to assume that the perpe *882 trator of the June 27 burglary was necessarily the same as the perpetrator of all the prior ones. This theory, though intriguing, does not rise to the level of reasonable doubt. It is not supported by the record because Mr. Drumgo' testified that in earlier burglaries he had lost some handguns. We also find nothing unique in use of the back door to gain entry: it is typically more secluded from public view than a front door. Finally, the theory asks us to assume too much about the prior burglaries, and is contrived. For all these reasons, the hypothesis does not dispel the state’s proof.
The defense called a number of alibi witnesses who attempted to place Johnson variously in his backyard, in his bedroom, and at the YMCA on the day of the burglary. Their testimony, however, was so confused and conflicting that the jury was justified in rejecting it. This assignment lacks merit.
ASSIGNMENT NO. 2
Here, Johnson claims the fingerprint comparison card was inadmissible. The first ground is that use of a card from police records created an inference that defendant had a bad reputation. LSA-R.S. 15:481.[4] The second ground is that the card, as it was eventually admitted, was substantially altered and no longer “best evidence.” LSA-R.S. 15:436.[5]
We first address the state’s contention that admitting the card could only have been harmless error. Defendant’s first witness, Mrs. Adams, who is Johnson’s step-mother, testified that Johnson had spent the first five months of 1984 in Monroe City Jail. Since the defense itself admitted Johnson’s prior inmate status, the state argues that there can be no error in using the card that only suggests that he might have an arrest record. We do not consider it harmless, if indeed it is error, to admit the only piece of evidence that links the defendant to the crime and effectively seals his guilt. Cf. State v. Pool, 361 So.2d 1202 (La.1978); Neil v. Biggers, 409 U.S. 188, 93 Ct. 375, 34 L.Ed.2d 401 (1972). Had the card not been admitted, there would have been no need for the defense to call any witnesses whatsoever.
We find, however, that admission of the card was not error. We do not think the card created an inference of bad character. In the recent case of State v. Davenport, 445 So.2d 1190 (La.1984), the court considered whether a mistrial[6] was mandated under LSA-R.S. 15:441 and LSA-C.Cr.P. art. 771 when an expert stated that he “was asked to check known prints against latents obtained at the scene” (emphasis added). The court held that this statement did not necessarily imply that the defendant had been previously arrested for another crime. 445 So.2d at 1195. Even though the issue in Davenport was framed in terms of other crimes evidence, the reasoning is broad enough to cover the reputation issue here. The inference of bad character is too remote. Furthermore, fingerprints are sometimes given as part of a voluntary identification program or on job applications. R. p. 134. Thus we conclude that having “prints on file” is not evidence of bad character.
We also note that fingerprints, like photo line-ups, are a means of identification. Photo line-ups may always be used provided the procedure has adequate indicia of reliability. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The reliability of the prints on the comparison card, as well as the expertise of the officer who examined the latents, is not questioned on appeal. The claim of preju *883 dice pales in light of the strong reliability and probative value of this evidence.
Furthermore, the trial court took special precautions to cleanse the comparison card of any imputations of other crimes. At the defendant’s insistence and after long argument, the state covered the entire card with tape and white card paper except for the prints themselves, the defendant’s name, the date, and the signature of the officer. The more prejudicial information was concealed. Although these precautions may not have completely dispelled any suspicion, they certainly minimized any inferences that could have been drawn from the card in its original state.
We do not hold that the use of “prints on file” is always permissible. Under the circumstances of this case, their use was not error. The far better procedure would have been to take the defendant’s fingerprints after his arrest and compare those with the latents for trial purposes.[7] This is the only way to guarantee a complete absence of suspicion.
Not satisfied with the deletions from the comparison card, Johnson next contends that the card was so altered that it no longer constitutes best evidence. LSA-R.S. 15:436. True, deletion of parts of an official document can conceivably reduce its authority. But the best evidence rule must be applied sensibly and with reason. State v. Gaskin, 412 So.2d 1007 (La.1982). We do not see how the covering of information on this comparison card detracted from its evidentiary value. The crucial information was not affected. Johnson’s reliance on Brown v. Morgan, 449 So.2d 606 (La.App. 1st Cir.1984) is misplaced. Brown permitted use of a mechanical reproduction of an original document on a showing that the copy was accurate. Here, the card is still the original. Brown does not apply. See also State v. Moore, 419 So.2d 963 (La.1982), which held that “unexplained” markings on a police log sheet did not affect its status as best evidence. The covering of prejudicial information here, made under the court’s direction, can no more vitiate the evidence than the unexplained blots in Moore.
The overwhelming consideration is that the defendant himself is the only person responsible for altering the card; he cannot now complain that it is not “best evidence.” The card was properly admitted and this assignment lacks merit.
For the reasons expressed, the conviction is affirmed.
CONVICTION AFFIRMED.

. LSA-R.S. 14:62.2 provides:
Simple burglary of an inhabited home is the unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein, other than as set forth in Article 60.
Whoever commits the crime of simple burglary of an inhabited dwelling shall be impris *880 oned at hard labor for not less than one year, without benefit of parole, probation or suspension of sentence, nor more than twelve years.

. LSA-C.Cr.P. art. 821 provides:
Art. 821. Motion for post verdict judgment of acquittal
A. The defendant may move for a post verdict judgment of acquittal following the verdict. A motion for a post verdict judgment of acquittal must be made and disposed of before sentence.
B. A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.
C. If the court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
D. If a post verdict judgment of acquittal is granted or if a verdict is modified, the state may seek review by invoking the supervisory jurisdiction of or by appealing to the appropriate appellate court.
E. If the appellate court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.

. Cf. LSA-C.Cr.P.-art. 800.

. LSA-R.S. 15:481 provides:
§ 481. Proof of bad character by state
The state is permitted to introduce testimony of the bad character of the accused only in rebuttal of the evidence introduced by him to show good character.

. LSA-R.S. 15:436 provides:
§ 436. Best evidence
The best evidence which from the nature of the case must be supposed to exist, and which is within a party’s control, must be produced.

.In the instant case defendant did not move for a mistrial.

. The state offered to do this but the defense resolutely refused.