STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-1373

STATE OF LOUISIANA

VERSUS

FREDDIE L. BURTON, JR.
AKA FREDDIE L. BURTON,
AKA FREDDIE L. BURTON, SR.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 117938
HONORABLE PATRICK LOUIS MICHOT, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Oswald A. Decuir, James T. Genovese, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Michael Harson**
**District Attorney, 15th Judicial District Court**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**Counsel for Appellee:**
**State of Louisiana**

**William Thomas Babin**
**Assistant District Attorney**
**405 West Convent St.**
**Lafayette, LA 70501**
**(337) 232-7747**
**Counsel for Appellee:**
**State of Louisiana**

**G. Paul Marx**
**Louisiana Appellate Project**
**P. O. Box 82389**
**Lafayette, LA 70598-2389**
**(337) 237-2537**
**Counsel for Defendant/Appellant:**
**Freddie L. Burton, Jr.**

**Freddie L. Burton, Jr.**
**Louisiana State Penitentiary**
**General Delivery**
**Angola, LA 70712**
*Pro se*

**GREMILLION, Judge.**

Freddie L. Burton, Defendant, broke into an unoccupied rental house owned by Brice Hector, without Hector's authorization, and removed two boxed ceiling fans from the home. The jury found him guilty of simple burglary and he was sentenced to serve twelve years at hard labor, with credit for time served, and to pay a fine of $2,000.00.

It is also undisputed that Hector spotted Defendant with the boxes walking in the curtilage of the home. Defendant dropped the boxes and fled the scene, but was not apprehended at that time. Fingerprints lifted from the boxes during the investigation were later confirmed to belong to Defendant and fingerprints taken of Defendant in open court matched those found on the boxes.

Defendant is now before this court on appeal, asserting that the evidence was insufficient to support his conviction. Defendant also contends that the trial court erred in allowing the State to offer a re-enactment of Defendant's fingerprinting. We affirm Defendant's conviction and sentence.

## ASSIGNMENT OF ERROR NUMBER ONE

Defendant argues that the verdict of simple burglary is based on insufficient evidence because there was no proof of actual entry. Defendant maintains that the State established only an attempted theft.

The analysis for a claim of insufficient evidence is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*,

1

393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Simple burglary is defined in La.R.S. 14:62 as "the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein, other than as set forth in R.S. 14:60 [aggravated burglary]." Defendant challenges only the element of entering the property in question, complaining that the State relied on assumptions and claims by the property owner that the boxes found in his possession were inside the structure the last time they were seen by the owner. Defendant maintains there is no proof that the boxes contained anything or that they were removed from inside the building.

At trial, Hector testified that he owned a rental house located at 123 St. Margarite. The rental house was located near his residence at 129 St. Margarite. On September 20, 2007, the rental house was not occupied as he was in the process of remodeling the inside for future tenants. Hector passed by the rental house between 9:45 and 10:00 p.m. on his way home that evening and observed a person coming from the left side of the rental house toward the front gate carrying two boxes, one in each hand. A street light illuminated the entire area. Hector stopped his truck in the middle of the road, exited the truck, and proceeded to walk toward the suspect. An entrance to the house was located on the back side in the area where Defendant

was spotted, but Hector confirmed that he did not see the suspect coming out of the house. Hector was about five feet away and could see the suspect's face clearly. As the suspect walked out of the gate, Hector said, "Hey, what are you doing?" The suspect dropped the boxes and ran. Hector pursued the suspect but did not apprehend him.

When police arrived, Hector explained what happened. An officer recovered the boxes and dusted them for fingerprints. According to Hector, the boxes recovered were the same boxes he had seen the suspect carrying, and the boxes contained ceiling fans that he had purchased from Home Depot to install in the rental house. The boxes were located inside the rental house in the kitchen area.

Hector entered the rental house with the officer and could see where the suspect had pried open the back door. Also, he could see that the boxes were no longer in the house. Additionally, Hector was able to positively identify Defendant as the suspect from a lineup. Lastly, Hector asserted that he had not given Defendant permission to enter the house and remove the boxes. On cross-examination, Hector testified that he had been at the rental house the day before the incident. He also confirmed, again, that he did not see Defendant exit the house. Hector stated that the door had a regular doorknob with a key entry which had been pried open in the area where the lock goes into the strike plate.

Deputy Cynthia Segura with the Lafayette Sheriff's Department testified that on September 20, 2007, she was dispatched to Hector's rental house. Hector advised that the house had been broken into and that he had seen the suspect. He explained that on his way home, he passed by the house and saw the suspect coming out of the house carrying boxes. When Hector screamed at the suspect, the suspect dropped the

3

boxes and ran. Hector tried to apprehend the suspect but lost sight of him when he fell.

Deputy Segura observed the point of entry into the house, noting pry marks and scratches on the door and door frame. Hector pointed to the area where he had seen the suspect with the boxes. In a nearby ditch, Deputy Segura saw the boxes, which she described as ceiling fan boxes. After putting on gloves, Deputy Segura removed the boxes from the ditch, touching only the edges, and placed them on the trunk of her vehicle. She then lifted fingerprints from the boxes. The fingerprints were introduced into evidence.

On cross-examination, Deputy Segura was questioned in greater detail about what was reported by Hector. According to Deputy Segura, Hector stated he had seen the suspect in the driveway of his rental house, leaving the house. She did not recall Hector reporting that he saw the suspect in the house.

Deputy Segura could not recall attempting to get fingerprints off the house where the suspect allegedly entered. If she did attempt to do so, she was not successful. Deputy Segura confirmed she had no fingerprints belonging to Defendant that were taken from the doorknob.

Detective Dwayne Angelle, also with the Lafayette Sheriff's Department, testified that the fingerprints lifted in the instant case were assigned to him for identification. The prints were entered into the Automated Fingerprint Identification System (AFIS), which provided a list of possible matches. Detective Angelle then made a positive match to Defendant, which was verified by another technician, Sergeant Kristen Bayard.

4

In support of his claim that the State did not show he had entered the house to take the boxes, Defendant refers to *State v. Pryor*, 306 So.2d 675 (La.1975).

In *Pryor,* the court addressed the issue of whether any evidence was introduced to prove that it was the defendant who committed the unauthorized entry upon which a burglary charge was based. A grocery store had been burglarized, and the only evidence introduced to connect the defendant with the crime was a latent fingerprint found on a filing cabinet in the store on the morning after the burglary. The defendant argued that the fingerprint, alone, did not prove that he was the person who made the unauthorized entry and theft on the date in question; it only proved that he touched the filing cabinet at some time in the past. The defendant also pointed out that he was a former employee and an occasional customer of the store. The court concluded, however, that the jury's inference that the fingerprints were recently made was not mere speculation but was reasonably based. As such, the court found no evidence requiring a directed verdict or acquittal.

The facts of the instant case are distinguishable from those in *Pryor* in that the fingerprints were not found inside the property in question but on boxes located outside the property. Defendant then claims that the State did not show he had entered the house and retrieved the boxes.

Like the court in *Pryor*, however, this court finds that the jury's inference that Defendant entered the house and then stole the boxes was reasonably based on the evidence adduced at trial, which consisted of more than Defendant's fingerprints on the boxes in question and not mere speculation. First, Hector testified that the boxes, which contained fans, were recently purchased by him and were stored in the kitchen waiting to be installed during his renovation of the house. There was no evidence or

5

testimony to suggest that the boxes were stored in a location outside the house or that the boxes did not contain ceiling fans. Next, Defendant was seen carrying the very same boxes away from the house, a fact which is not challenged by Defendant on appeal. Further, Hector was close enough to clearly see Defendant's face and the area was well lit. Lastly, the fingerprints found on the boxes confirmed that Defendant had handled the boxes.

There is no merit in this assignment of error.

## ASSIGNMENT OF ERROR NUMBER TWO

Defendant argues that the trial court erred in allowing the State to offer a re-enactment of Defendant's fingerprinting when the only purpose of doing so was to give undue and prejudicial evidence to the jury. Defendant maintains that the re-enactment misled the jury and gave more weight to the evidence than it would have normally received.

Following a bench conference at trial, counsel for Defendant addressed for the record the State's request to fingerprint Defendant in open court as follows:

> MR. REGISTER: It's my understanding at this point, Your Honor, that Mr. Babin wants to fingerprint my client in open court for purposes of soliciting evidence, and I do understand that he may have given you some type of correspondence which makes reference of various cases.
>
> We would object to Mr. Babin fingerprinting my client in open court based upon his constitutional right. We would simply argue at this point that [Defendant] has a constitutional right not to testify and to force him in open court to be displayed as some type of a character to submit evidence would be in violation of his constitutional right in that it would be forcing him to testify and submit evidence against himself. That's the basis of my objection.
>
> MR. BABIN: Judge, the law is well settled, that that is non-testimonial evidence. Not only have I done it numerous times, I think that my witness has done it numerous times. There's no doubt that that is allowed. It is not a violation of the Fifth Amendment. It's clearly

6

non-testimonial evidence. It is allowed. It's done routinely in habitual offender proceedings. And I'm surprised -- It's not a surprise. The law is clear that you're able to do that.

THE COURT: The objection is overruled.

On appeal, Defendant refers to La.Code Evid. art. 403, which provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." Defendant also notes comment (d) under Article 403, which reads:

> The risk of undue prejudice spoken of in this Article may be less substantial when the trier of fact is a judge rather than a jury, and thus sometimes evidence may properly be admitted in a non-jury trial that would be inadmissible in a jury trial. See Pugh & McClelland, "The Work of the Louisiana Appellate Courts for the 1975-1976 Term, Evidence," 37 La.L.Rev. 575 (1977), reprinted in G. Pugh, Louisiana Evidence Law, 1978 Supp. at 1.

Defendant contends that the re-enactment of the fingerprinting exercise was prejudicial, because no one challenged Detective Angelle's findings that the prints belonged to Defendant. Further, Defendant asserts there was no issue of staleness or contamination of the sample prints and no reason for the re-enactment other than to make a bigger impression on the jury regarding the quick and immediate identification an examiner could make.

Defendant finds distinguishable the facts in *State v. Robertson*, 358 So.2d 931 (La.1978), wherein the court found that the probative value of an in-court fingerprint procedure outweighed any prejudicial effects. The court in *Robertson* reasoned that the defendant's identification as one of the perpetrators of a robbery was a material issue in dispute, and thus, his fingerprint identification was highly probative in placing him at the scene. Also, the court noted that the fingerprint on the card

7

obtained from the latent print files was not current and not clearly identified as belonging to the defendant. As such, the in-court fingerprint procedure was necessary to obtain a current fingerprint that undeniably belonged to the defendant.

Defendant also asserts that various types of in-court demonstrations have been barred from the courtroom. Defendant refers to *State v. Rault*, 445 So.2d 1203 (La.), *cert. denied*, 469 U.S. 873, 105 S.Ct. 225 (1984), wherein defense counsel moved to introduce into evidence a four-hour tape recording of a hypnotic session by the defendant and a hypnotist to illustrate to the jury the hypnotic technique, the fact that the defendant had been in a hypnotic trance, and to negate suggestibility in the conduct of the session. In weighing the relative probative value of the proffered evidence against its possible prejudicial effect, the court determined that the tape recording and hypnosis demonstration were cumulative and of questionable validity; thus, the trial court did not abuse its discretion in disallowing the tape recording and hypnosis demonstration.

The *Rault* court also stated that the "[c]riteria for withholding permission include 'considerations arising from the possible disruption of orderly and expeditious proceedings or from the lack of similarity between courtroom conditions and the actual conditions sought to be re-tested.' *State v. Mays*, 315 So.2d 766, 768 (La.1975). *See also State v. Hampton*, 326 So.2d 364 (La.1976)." *Id.* at 1208. Defendant argues in the instant case that the original prints were recovered in the dark from the boxes situated on the hood of a patrol car. As such, Defendant maintains that the clean and dry conditions in the courtroom differed from the conditions in which the fingerprints were recovered.

8

The State argues on appeal that the fingerprinting of Defendant was not a re-enactment, asserting that prior to that time, Defendant's fingerprints were only matched using the police fingerprint database. To dispel any doubt that Defendant's fingerprints were the same fingerprints lifted from the boxes, the State requested that Defendant's fingerprints be taken in open court and directly compared to the fingerprints recovered from the boxes at issue. During his closing argument, the prosecutor explained why Defendant was fingerprinted during trial:

> He [defense counsel] claims I made a show for you here when I printed this man. Well, that wasn't a show. I wanted to make sure you knew. I didn't want you just to hear Detective Angelle say we put it in a machine in AFIS and it came back with a print. I wanted you to know for sure. Well, you know for sure now. He took the man's prints right here. I didn't do it for show; I did it for evidence. I did it for you to feel comfortable to know there's no doubt, a hundred percent, according to both detectives, according to both of them a hundred percent this man's prints are on the box[.]

Additionally, the State maintains that the procedure utilized was specifically sanctioned and authorized by the supreme court in *State v. Sheppard*, 350 So.2d 615 (La.1977). In *Sheppard*, the defendant argued that the trial court erred in requiring him to be fingerprinted in the presence of the jury. The State requested the procedure to dispel any doubt that the defendant's fingerprints were those compared to latent prints lifted from a plastic stereo dustcover found just outside the crime scene. In finding no error in the trial court's ruling, the court reasoned:

> It is well recognized that the privilege against self-incrimination relates only to testimonial compulsion. The privilege does not require an exclusion of the accused's body as evidence when it may be material. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *State v. Wilson*, 329 So.2d 680 (La.1976). More particularly, we have held that the privilege against self-incrimination is not violated by taking fingerprints in open court. *State v. House*, 320 So.2d 181 (La.1975).

*Id.* at 639.

9

Defendant in the instant case does claim that his right against self-incrimination was violated, but instead maintains that the in-court fingerprinting was prejudicial. The State identified the relevance and probative value of fingerprinting Defendant in open court to dispel any doubt that Defendant's fingerprints were the same fingerprints lifted from the boxes. Further, Defendant's identification as the perpetrator of a burglary was a material issue in dispute, and thus, his fingerprint identification was highly probative in placing him at the scene. *See Robertson*, 358 So.2d 931. Although Detective Angelle's finding that the prints belonged to Defendant was not challenged, Defendant does not show how the confirmation of same at trial by fingerprinting him in court was so prejudicial that it outweighed the probative value of the evidence. The State clearly set forth at trial its reason for using such evidence to confirm Defendant's identity as the perpetrator, leaving no merit to Defendant's argument that the fingerprinting was a re-enactment intended to sway the jury.

## DECREE

Defendant's conviction and sentence are affirmed.

**AFFIRMED.**

10