437 So.2d 252 (1983)
STATE of Louisiana
v.
Craig Patrick SMITH.
No. 82-KA-1527.
Supreme Court of Louisiana.
September 2, 1983.
*253 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Norval J. Rhodes, Dist. Atty., James Alcock, Asst. Dist. Atty., for plaintiff-appellee.
John Wilson Reed, Glass & Reed, New Orleans, for defendant-appellant.
MARCUS, Justice.
Craig Patrick Smith was indicted by the grand jury for the second degree murder of Rick Brian Whitener in violation of La.R.S. 14:30.1. After trial by jury, he was found guilty of manslaughter and sentenced to serve twenty-one years at hard labor. On appeal, defendant relies on four assignments of error for reversal of his conviction and sentence.

FACTS
On July 22, 1981, defendant drove Carey Smith (his brother), Jessie Trevathan and Michael Detiveaux to Rick Whitener's trailer. The alleged purpose of the visit was to beat up Whitener for "messing with" or "seeing" Carey's estranged wife. They arrived at the trailer site at about 8:30 p.m. whereupon Trevathan went into the trailer. The only person there was Whitener's roommate, George Cunningham, who told Trevathan that Whitener had not yet returned from work. Trevathan left. Defendant then drove the three other men around for a while.
According to the testimony of Cunningham, the following events then transpired. At 9:00 p.m., he heard a knock at the door and when he opened it, Trevathan was pointing a .25 caliber pistol at him. Defendant and Carey came into the trailer each armed with a club. While Trevathan guarded Cunningham with the gun, defendant and Carey checked out the rest of the trailer. Thereafter, Carey cut the telephone cord while defendant held the telephone receiver with his shirt. Defendant then tied Cunningham's hands behind his back with an extension cord. At about 9:30 p.m., the men heard Whitener's car pull up. Defendant, Carey and Trevathan hid and when Whitener walked in, they ran out and grabbed him. Cunningham gave conflicting testimony as to who actually tied up Whitener. At the trial, he stated that defendant acted alone but at a prior hearing he indicated that it was both defendant and Carey. In any event, defendant at least participated in tying up Whitener's hand with a cord which also ran around his neck. The two captives were then put into the car and defendant drove. Detiveaux had left the group before Whitener arrived because he was afraid Trevathan's gun would go off. After about 20-25 minutes, defendant stopped the car and Cunningham was released.
According to the testimony of defendant, he drove for a few more minutes and stopped the car whereupon Carey, Trevathan and Whitener got out. Defendant saw Carey hit Whitener a few times with a club and then Trevathan punched him a few times. Defendant then walked over and hit Whitener (who was still tied up) a few times with his fist. Defendant then walked away but heard a "bunch of shots" as he left. He turned around and saw Trevathan standing over Whitener with the gun. He then got into the car and started the engine. He saw Carey and Trevathan each grab Whitener by a leg and pull him away. About five minutes later, they returned and said "Let's go." On the way back home, they stopped for a beer. One week later, Whitener's body was recovered from Bayou Blue. Cause of death was "multiple gunshot wounds of the head."
Michael Detiveaux, a friend of defendant, also testified. He claimed that defendant did not go into the trailer until after Cunningham was tied up. However, defense counsel admitted in closing argument that "Detiveaux is not completely clear on what happened that night. Michael Detiveaux... had no recollection that there was initially a visit to the trailer that resulted in nothing happening [the visit at 8:30 p.m.]."

*254 ASSIGNMENTS OF ERROR NOS. 1 AND 2
Defendant contends the trial judge erred in denying his requests to order a disclosure or, in the alternative, to conduct an in camera inspection of prior statements of state witnesses, Cunningham and Detiveaux.
Upon completion of the direct examination of Cunningham and then again at the end of Detiveaux's direct examination, defendant requested a disclosure or an in camera inspection of all written statements, grand jury testimony, and any other information by a state agency that revealed any inconsistencies or contradicted the direct examination of the two witnesses. As to Cunningham, defendant focused on the statements concerning who tied up Whitener and Cunningham. There was no such specificity with regard to Detiveaux's testimony. The trial judge denied defendant's request on each occasion.
The United States Supreme Court held in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that upon request the state must produce evidence that is favorable to the accused where it is material to guilt or punishment. The Brady rule has been expanded to include evidence which impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. A finding of materiality of the evidence is required under Brady. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); State v. Peters, 406 So.2d 189 (La.1981). In United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court stated:
In Brady the request was specific. It gave the prosecutor notice of exactly what the defense desired. Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.
At the material witness hearing conducted on December 2, 1981, Cunningham testified that defendant was the one who tied his hands and that both defendant and Carey tied up Whitener. At trial on February 9, 1982, Cunningham testified that defendant had tied up both Whitener and himself. Hence, the only discrepancy between his trial and prior testimony was that earlier he had stated both defendant and Carey had tied up Whitener while at trial he testified that it was only defendant. Whether defendant tied up Whitener alone or did it with Carey is not material to his guilt of or punishment for second degree murder, particularly in light of the other evidence relating to his involvement in the crime. In any event, defendant, referring to the transcript of the material witness hearing, effectively impeached Cunningham on this point. In addition, defendant impeached his credibility by a prior conviction for grand theft in Ohio.
As to Detiveaux, defendant asked for all prior statements, grand jury testimony, or any other information obtained by a state agency which was inconsistent with his testimony. Considering that Detiveaux left the trailer before Whitener arrived, it could hardly be said that his testimony could be material to defendant's guilt or punishment. Additionally, this request was not specific. In Agurs, the Supreme Court stated that a Brady request must be specific and material. Rather, this was a general request for all prior inconsistent statements. As noted in Agurs, there is "no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor."
In sum, the trial judge did not err in denying defendant's requests to order a disclosure or to conduct an in camera inspection of prior statements of Cunningham and Detiveaux.
*255 Assignments of Error Nos. 1 and 2 are without merit.

ASSIGNMENTS OF ERROR NOS. 3 AND 4
Defendant contends the trial judge erred in failing to comply with the sentencing guidelines set forth in La.Code Crim.P. art. 894.1 and in imposing an excessive sentence.
La. Const. art. 1, § 20 prohibits the imposition by law of excessive punishment. Accordingly, we have held that imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional rights against excessive punishment that is enforceable by this court on appellate review. The trial judge's reasons in imposing sentence, as required by La.Code Crim.P. art. 894.1, are an important aid to this court when called upon to exercise its constitutional function to review a sentence complained of as excessive. Moreover, the trial judge is given a wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Washington, 414 So.2d 313 (La.1982).
Defendant was sentenced to twenty-one years at hard labor, the maximum penalty for manslaughter. In written reasons filed in the record at the time of sentencing, the trial judge noted that defendant admitted his participation in the kidnapping of decedent and hitting him with his fist prior to being shot by a fellow conspirator. In finding that there was a "considerable risk that if this young man is returned to the streets without incarceration on a long term basis he will be involved in some other criminal activity" and that a less than maximum sentence would deprecate the seriousness of the crime, the trial judge stated:
Certainly any person seeing as Craig did the brutal beating of the decedent by hitting him 10 or more times with an ax handle, the decedent being tied up at all times and then with his fists hitting the decedent knocking him to the ground bespeaks of a hardened brutal person.
While the trial judge did not completely comply with La.Code Crim.P. art. 894.1, the record fully supports the sentence imposed; hence, a remand is unnecessary. State v. Boatright, 406 So.2d 163 (La.1981). Defendant was at least an active participant in the murder of Whitener. He drove the car to Whitener's trailer. Subsequently, he entered the trailer with a club. He assisted his brother in the search of the trailer and in cutting the telephone cord. He then tied Cunningham's hands behind his back. When Whitener arrived, he along with Carey and Trevathan hid and then grabbed Whitener. Defendant either tied up Whitener alone or with his brother. He then drove the two captives (Cunningham and Whitener) to an isolated area. Even according to his own testimony, after watching Carey hit Whitener with a club and Trevathan punch him, he walked over and hit Whitener (who was still tied up) several times with his fist. Under these facts alone, we are unable to say the trial judge abused his discretion in imposing the maximum penalty for the offense for which defendant was convicted (manslaughter). Hence, we do not find defendant's sentence excessive.
Assignments of Error Nos. 3 and 4 are without merit.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
LEMMON, J., concurs in the result.