609 So.2d 1144 (1992)
STATE of Louisiana, Appellee
v.
Kenneth B. DUKES, Jr., Appellant.
STATE of Louisiana, Appellee,
v.
Milton Lee SHUBBIE, Appellant.
STATE of Louisiana, Appellee,
v.
Joseph REED, Appellant.
Nos. 24287-KA, 24288-KA and 24289-KA.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1992.
Rehearing Denied January 14, 1993.
*1148 Aylmer M. Wyche, III, Bossier City, for Milton Lee Shubbie.
*1149 Michael G. Latimer, Bossier City, for Kenneth Bruce Dukes, Jr.
A.M. Stroud, III, Shreveport, for Joseph Reed.
Richard Ieyoub, Atty. Gen., Baton Rouge, James M. Bullers, Dist. Atty., Whitley R. Graves, Asst. Dist. Atty., Benton, for State.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
SEXTON, Judge.
Anthony Merriman, Milton Shubbie, Kenneth Dukes, and Joseph Reed were charged by bill of information with the crime of manufacturing methamphetamine, a violation of LSA-R.S. 40:967(A). Following a 13-day trial, the jury found the defendants guilty of attempted manufacture of methamphetamine, a violation of LSA-R.S. 40:967(A) and LSA-R.S. 40:979. For these convictions, Milton Shubbie was sentenced to serve seven and one-half years at hard labor, Kenneth Dukes was sentenced to serve three years at hard labor, and Joseph Reed was sentenced to serve nine years at hard labor. Defendants Shubbie, Dukes, and Reed now appeal their convictions and sentences raising several assignments of error.[1] We affirm the convictions and sentences of Milton Shubbie and Kenneth Dukes and reverse and vacate the conviction and sentence of Joseph Reed.

FACTS
During the last week of January 1990, Sammy McClinton saw Kenneth Dukes, Milton Shubbie, and Anthony Merriman at the Rainbow Horse Farm in Bossier Parish. McClinton, who was the manager of the farm, knew the men did not have permission to be there and he asked them to leave. Instead of departing the area, the men turned on the electricity in one of the horse barns and ran a water hose into it. McClinton saw Shubbie and Dukes at the barn again early on the morning of January 27, 1990.
On Saturday, January 27, 1990, a confidential informant, who had previously provided trustworthy information, notified Bossier Parish Sheriff Deputy Charles Rosalie that a clandestine methamphetamine lab was located at the Rainbow Horse Farm. Deputy Rosalie passed on that information to narcotics investigators, Deputy Ricky Bridges and Deputy Ernie Plunkett. The confidential informant and Deputies Bridges and Plunkett met each other and then drove out to the Rainbow Horse Farm around 8:15 p.m. The confidential informant pointed out tack room number 3 as the location of the clandestine laboratory. The confidential informant described the equipment he had seen within the tack room and the distinctive odor associated with a methamphetamine lab. The deputies saw a Hyundai automobile with Texas license plates in front of the barn. However, no one else was around, so the deputies left the area and dropped off the confidential informant.
Deputies Bridges and Plunkett then returned to Rainbow Horse Farm where they set up surveillance. During this surveillance, both deputies noticed a distinctive odor coming from the tack room. Only five minutes later, the deputies observed at least four individuals loading boxes and other articles into the Hyundai vehicle. Four individuals then got into the car and left the scene.
Deputies Bridges and Plunkett began to follow the vehicle. The deputies then contacted Deputy Warner Barteet, who was in a marked sheriff's car, to assist them in stopping the vehicle. The Hyundai vehicle was eventually stopped at the McDonald's restaurant on Highway 80 by Deputy Barteet. Deputies Bridges and Plunkett arrived at the scene moments later. After the vehicle was stopped, Deputies Bridges and Plunkett ordered all four occupants to exit the vehicle. At that time, the deputies noticed the odor of methamphetamine emanating from the vehicle and also observed syringes in the vehicle in plain view. Anthony Merriman, Kenneth Dukes, Douglas Sepulvado, and Milton Shubbie were the occupants of the vehicle, and they were all *1150 subsequently arrested. The deputies also conducted a search of the trunk of the vehicle where they found two cans of acetone, glassware, a set of scales, and three glass jars which contained suspected methamphetamine oil. An analysis of this oil conducted by the North Louisiana Crime Lab in Shreveport revealed trace amounts of methamphetamine in one of the glass jars.
After the arrest, Deputy Bridges prepared an affidavit and a search warrant was issued to search tack room number 3 at the Rainbow Horse Farm. Deputies Don Rittenberry and Tommy McWilliams had been sent to secure the tack room until the search warrant was issued. Once they had the search warrant, the deputies proceeded to search the tack room where they found a heating mantle, a 12,000 milliliter flask, and a reflux condenser tube, which contained a liquid that was boiling. Mr. Jimmy Barnhill of the North Louisiana Crime Lab was called in and he helped shut down the operation at the tack room.
Deputies Bridges and Plunkett also took a statement from Anthony Merriman after he had been arrested. Merriman indicated that Amos Brown had given him $2000 in cash to finance the lab. Merriman gave this money to another individual, and they then went to a location in south Shreveport where they picked up the chemicals and glassware for the lab.
While still investigating who was involved with the methamphetamine lab, the deputies obtained fingerprints from several items found in the Hyundai vehicle and the tack room. The deputies received information from the Bureau of Identification Division of the State Police that two fingerprints matched the fingerprints of Joseph Reed. One of Reed's fingerprints had been taken from an acetone can found in the back of the vehicle and another fingerprint had come from a mason jar which was found in the tack room. An arrest warrant was issued and Joseph Reed was subsequently arrested as a principal in the manufacturing of methamphetamine.

SUFFICIENCY OF THE EVIDENCE
On appeal, Joseph Reed contends the evidence presented at trial is insufficient to sustain his conviction for attempted manufacture of methamphetamine. Reed asserts that a review of the evidence presented at trial shows that his fingerprints were found on two items which were not in and of themselves inculpatory. Reed contends there was no other evidence presented against him at trial. Each of the experts who testified stated there was no way of telling how long a fingerprint could be maintained on an item, nor was there any way to tell when the print had been placed there. Reed also contends there is no evidence that he was ever present at the tack room or that he supplied the equipment for the lab. Therefore, Reed contends the circumstantial evidence presented at trial does not exclude every reasonable hypothesis of his innocence and his conviction should be reversed.
The standard of review for the sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La. 1984). The rule as to circumstantial evidence is that, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438. However, this statutory rule for circumstantial evidence does not provide a separate test from the Jackson v. Virginia sufficiency of the evidence test whenever the state relies on circumstantial evidence to prove an element of the crime. State v. Wright, 445 So.2d 1198 (La.1984); State v. Eason, 460 So.2d 1139 (La.App. 2d Cir.1984), writ denied, 463 So.2d 1317 (La. 1985). Although the circumstantial evidence rule may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, it emphasizes the need for careful observance of the usual standard and provides *1151 a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. State v. Chism, 436 So.2d 464 (La.1983). Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson v. Virginia to satisfy a rational jury that the defendant is guilty beyond a reasonable doubt. State v. Wright, supra; State v. Eason, supra.
Pursuant to LSA-R.S. 14:27 and LSA-R.S. 40:967, in order to sustain a conviction for attempted manufacture of methamphetamine, the state must show that the defendant had a specific intent to manufacture methamphetamine and did or omitted an act for the purpose of and tending directly toward the accomplishing of his object.
Further, the jury in the instant case had to determine that Joseph Reed was a principal in the commission of the offense. A principal is defined in LSA-R.S. 14:24 as follows:
All persons concerned in the commission of a crime, whether present or absent and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
In the instant case, the only evidence presented by the state against Joseph Reed was one fingerprint found on an acetone can that was in the back of the Hyundai and one fingerprint found on a mason jar that was in the tack room. This evidence, standing alone, is insufficient under the Jackson v. Virginia standard of review to sustain Reed's conviction for attempted manufacture of methamphetamine.
In State v. Pryor, 306 So.2d 675 (La. 1975), the defendant's fingerprints were found on a filing cabinet from which some watches and money had been stolen. In quoting from Moenssens, Fingerprints and the Law 118-25 (1969) (Inbau Law Enforcement Series), the court noted:
To support a conviction based solely or primarily on fingerprint evidence, it must be shown that the defendant's fingerprints were found under such circumstances as to exclude any reasonable possibility of consistency with innocence. If fingerprints of the accused are found at the place where a crime has been committed and in such manner as to exclude every reasonable hypothesis save that the fingerprints were impressed at the time that the crime was committed, then a conviction on the sole evidence of such fingerprints may be sustained.
....
The finding of a person's fingerprints at crime scenes is not proof of his guilt unless circumstances are such that the fingerprints could only have been impressed there at the time when the crime was committed.
In Pryor, evidence was presented that indicated that the fingerprints had to have been placed on the filing cabinet recently. There was also testimony presented which negated any innocent explanation for the fingerprint being placed on the cabinet. The Pryor court concluded that the evidence reasonably excluded an innocent explanation for the recent presence of the fingerprints at the scene, and the defendant's conviction was upheld.
In State v. Jackson, 582 So.2d 915 (La. App. 2d Cir.1991), this court noted:
A defendant's fingerprint on an object associated with a crime such as theft is direct evidence that the defendant touched the object at some time and is circumstantial evidence that he touched it at the time of the offense. State v. Wade, 467 So.2d 1191 (La.App. 2d Cir. 1985). When the state uses the fingerprint as circumstantial evidence of guilt, it must exclude any reasonable hypothesis that the defendant touched the object at some time other than the time of the offense. State v. Davenport, 445 So.2d 1190 (La.1984); State v. Wade, supra.
The Jackson court upheld the defendant's conviction for theft when the defendant's fingerprints were found on a drawer which had been removed in order to get to some cash. The court noted that the defendant had been seen in the area of the crime and the desk was not accessible to the general public, thus negating the possibility that *1152 the defendant's fingerprints had been placed at the crime scene innocently or at some other time.
The evidence presented in the instant case is readily distinguishable from that presented in Pryor, supra, and Jackson, supra. First, the defendant's fingerprints were found on an acetone can and a mason jar, items which in and of themselves are not indicative of any criminal activity. Furthermore, no evidence was presented in the case to preclude the possibility that the defendant's prints were placed on these items at some time prior to their being used in connection with the charged offense. The state argues that the conditions in the laboratory and the frequent handling of the equipment indicate that the fingerprints must have been placed on the items recently. However, both of the state's fingerprint expert witnesses, Gwen Brashear and Sybill Guidry, testified that they were unable to tell how old the fingerprints were or when they had been placed on the items in question. Also, no evidence was presented that the conditions in the laboratory would have affected the fingerprints in any manner. Joseph Reed was never identified by anyone as being in the barn area or the tack room where the methamphetamine laboratory was located. It is clear that the state failed to rebut the reasonable hypothesis of innocence that the defendant touched these objects at some time other than during the commission of the offense.
The state also argues that it is logical to infer from the statement given by Merriman that it was Reed who supplied the equipment for the lab, thus making him a principal to the crime. However, there was no evidence presented by the state that Reed lived in south Shreveport, where the equipment was obtained. There was also no evidence presented that Reed knew or had ever been associated with Merriman or any of the other defendants. It was never shown that Reed had any knowledge that the items on which his fingerprints were located might be used for the manufacturing of illegal narcotic substances. The state did not present any evidence that Reed had the specific intent to manufacture methamphetamine or that he did an act in furtherance of his objective. The circumstantial evidence presented against Reed is insufficient to sustain his conviction for attempted manufacture of methamphetamine. Accordingly, Joseph Reed's conviction is reversed, vacated, and set aside. We therefore pretermit discussion of any of Reed's other assignments of error.
Defendant, Kenneth Dukes, also argues that the evidence was insufficient to sustain his conviction for attempted manufacture of methamphetamine. Dukes contends there was no fingerprint evidence which connected him to the lab at the tack room. Dukes asserts that he was only a passenger in the car and it was never proven that he had dominion and control over the items found in the vehicle's trunk. Dukes contends the articles seized by the law enforcement officers were not capable of being used for the manufacture of methamphetamine and therefore his conviction should be reversed.
The evidence presented against Dukes at trial showed that he had been seen in the tack room area earlier in the week and on the day of his arrest by Sammy McClinton. Deputies Bridges and Plunkett testified that at least four individuals were observed loading the vehicle outside the tack room. These individuals entered the car and left the site of the methamphetamine laboratory. The deputies then followed the car until it was stopped by the marked patrol unit. Both deputies testified that no one exited or entered the vehicle from the time it left the tack room until it was stopped. Therefore, there is a direct connection between Dukes and the methamphetamine laboratory on more than one occasion.
Deputies Bridges and Plunkett also testified that the boxes, which Dukes had been seen helping load into the trunk of the car, contained chemicals and laboratory equipment for the production of methamphetamine. Furthermore, one of the jars found in the trunk contained trace amounts of methamphetamine. It was obvious that the occupants of the car were involved in *1153 carrying off the wash from the manufacture of the methamphetamine. After viewing all of the evidence in a light most favorable to the prosecution, we conclude any rational trier of fact could have found the elements of attempted manufacture of methamphetamine were proven as to defendant Dukes beyond a reasonable doubt.
Milton Shubbie also asserts that the evidence is insufficient to sustain his conviction for attempted manufacture of methamphetamine. Shubbie contends that the state's expert chemist, Mr. Barnhill, testified that the chemical process taking place in the tack room was the manufacture of P2P, rather than methamphetamine. Accordingly, Shubbie contends that his conviction cannot stand and the state charged him with the wrong offense.
Jimmy Barnhill of the North Louisiana Crime Laboratory did testify that P2P was being made in the laboratory at the tack room when he shut the process down. Mr. Barnhill also testified that P2P was a necessary precursor to making methamphetamine, and that the chemicals present in the tack room indicated the manufacture of methamphetamine. Shubbie's argument also ignores the fact that methamphetamine was actually found in a jar in the car in which he was arrested. Along with the fact that he was seen at the tack room area loading the car and the fact that his fingerprints were found on two acetone cans, we find the evidence sufficient beyond a reasonable doubt to sustain Shubbie's conviction for attempted manufacture of methamphetamine.

MOTION TO SUPPRESS
Defendants Dukes and Shubbie contend the trial court erred in denying their motions to suppress. The defendants argue that the evidence obtained from the warrantless search of the vehicle should have been suppressed. Defendants contend the deputies based their decision to stop the vehicle solely upon the information given by the confidential informant, even though the deputies did not know him prior to the date of the incident and apparently had no first-hand basis for believing the information to be reliable. Defendants assert the stop of the vehicle was not based upon reasonable suspicion that a crime was being committed. Therefore, the defendants contend that if the stop of the vehicle was unreasonable or unlawful, all of the evidence seized pursuant to the vehicle and the tack room searches must be suppressed.
In Louisiana, police officers have a right to stop people who are reasonably suspected of criminal activity. LSA-C.Cr.P. Art. 215.1. The right of law enforcement officers to temporarily detain and interrogate persons reasonably suspected of criminal activity is well established. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Taylor, 363 So.2d 699 (La. 1978).
Under the automobile emergency exception to the search warrant requirement, a constitutional search of a vehicle may be made without a warrant (1) if there is probable cause to believe that the vehicle contains contraband or evidence of a crime, and (2) exigent circumstances require an immediate search. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Chaney, 423 So.2d 1092 (La.1983); State v. Cohen, 549 So.2d 884 (La.App. 2d Cir.1989), writ denied, 559 So.2d 135 (La.1990).
Exigent circumstances have been defined as the impracticability of obtaining a warrant due to the possibility that the car could be moved by its occupants, if not arrested, or by someone else. An immediate warrantless search is therefore constitutionally permissible when "the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." Chaney, supra.
We find that the trial court did not err in denying the defendants' motions to suppress. Deputies Bridges and Plunkett had reasonable suspicion under LSA-C.Cr.P. Art. 215.1 to stop the Hyundai vehicle. The deputies had received information from a confidential informant, who had previously provided reliable information to *1154 another deputy, that a drug lab was in operation at Rainbow Horse Farm. The confidential informant told the deputies that he had seen the lab while it was cooking and smelled the distinctive odor of freshly cooked methamphetamine.[2] After they had set up surveillance of the lab site, both deputies smelled the distinctive odor of methamphetamine coming from the tack room. The deputies then saw equipment being loaded into the vehicle and four individuals depart the scene. Based on the above information, the deputies had probable cause to stop the car and the exigencies of the situation required the stop. The deputies testified that once the vehicle was stopped, they smelled the distinctive odor of methamphetamine emanating from the car. The deputies also saw syringes in plain view in the vehicle. These circumstances afforded the deputies ample probable cause to search the entire vehicle.
Since the stop, detention and search of the vehicle were valid, the search warrant issued to search the tack room, which was based on the above information, was also valid. Given all the circumstances set forth in the affidavit before him, the issuing magistrate could have found that there was a fair probability that contraband or evidence of the crime would be found in the tack room. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Loera, 530 So.2d 1271 (La. App. 2d Cir.1988), writ denied, 536 So.2d 1252 (La.1989). The subsequent search of the tack room, based on a finding of probable cause by a neutral and detached magistrate was valid and did not constitute fruit of a poisonous tree. These assignments of error have no merit.

CONFESSION TESTIMONY
Defendant Dukes contends the trial court erroneously permitted Deputies Bridges and Plunkett to testify before the jury as to a purported confession given by co-defendant, Anthony Merriman. Dukes contends this statement impermissibly incriminated him and that he was not given the chance to cross-examine Merriman concerning this statement. Dukes contends the inappropriate admission of Merriman's statement effected impermissible proof that connected him to a drug laboratory.
In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court reversed the robbery conviction of a defendant who had been implicated in the crime by his co-defendant's confession. Because the co-defendant had not taken the stand at the joint trial and thus could not be cross-examined, the court held that admission of the co-defendant's confession had deprived the defendant of his rights under the Confrontation Clause of the Sixth Amendment. The problem, according to the court, was a belief that the jurors could not follow the trial court's instructions to thrust the incriminating statement from their minds regarding the defendant named therein.
In the years since Bruton was decided, lower courts have interpreted it to allow the introduction of "redacted" confessions that refer to other participants, but do not inculpate any co-defendants by name. United States v. Stewart, 579 F.2d 356 (5th Cir.1978), cert. denied, 439 U.S. 936, 99 S.Ct. 332, 58 L.Ed.2d 332 (1978). In Stewart, supra, the defendants Stewart and Scott were convicted of bank robbery. During trial, Stewart testified that he "and some of his buddies hit" the bank. The court held this did not violate Bruton because (1) a statement made by one defendant, not inculpatory of a co-defendant on its face, is admissible in a joint trial even though other evidence in the case indicates that a co-defendant, not mentioned in the statement, also was involved in the activities described; and (2) the trial court gave a cautionary instruction that the statement could not be considered as evidence against the other defendant.
In the instant case, the redacted confession of Merriman, which did not name any of the co-defendants, was allowed into evidence. *1155 The statement itself was not inculpatory of any of the co-defendants on its face. Furthermore, the trial court gave a cautionary instruction that the statement could not be considered as evidence against any of the other defendants. Therefore, we find there has been no Bruton violation, and this assignment of error is without merit.

SEVERANCE
Defendant Shubbie contends the trial court erred in denying his pretrial motion to sever his trial from that of his co-defendants. Attached to Shubbie's motion for severance was a statement apparently signed by co-defendants Duke and Merriman that on the night they were arrested in January of 1990, they had picked Shubbie up about five minutes before being arrested while Shubbie was "walking along the railroad tracks apparently hitchhiking." There is an illegible signature signed as a witness to that statement over the date of "9 Aug 90."
LSA-C.Cr.P. Art. 704 provides:
Art. 704. Severance
Jointly indicted defendants shall be tried jointly unless:
(1) The state elects to try them separately; or
(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.
A determination as to whether to grant or deny a severance rests in the sound discretion of the trial court and a decision thereon will not be reversed on appeal in the absence of a clear showing of abuse. State v. Prudholm, 446 So.2d 729 (La.1984). The burden is on the defendant to satisfy the trial court that justice requires a severance. Mere allegations are insufficient. State v. Williams, 416 So.2d 914 (La.1982).
Where it is clear from the record that a co-defendant would give exculpatory testimony if the severance were granted, denial of a severance is an abuse of discretion. However, the burden is on a movant to establish that the co-defendant would in fact testify at a separate trial. A movant must also establish the exculpatory nature of the proposed testimony. State v. Turner, 365 So.2d 1352 (La.1978).
Apparently, the hearing on the motion to sever held on February 26, 1991, consisted only of argument regarding the asserted statement of the co-defendants, as the minutes of that date indicate that the motion was "argued and denied." Further, counsel did not designate a transcript of the hearing on this motion.
On this record, we cannot conclude that the defendant has carried his burden of clearly showing that the co-defendants would, in fact, have testified in favor of the defendant in the exculpatory fashion asserted. The trial court did not abuse its discretion in denying the motion for severance. This assignment of error lacks merit.

FAILURE TO PRODUCE DUFFEL BAG
Defendant Shubbie contends the trial court erred in failing to require the state to produce defendant's green duffel bag, which contained evidence favorable to him. Shubbie contends the failure to produce this evidence prejudiced his ability to substantiate a defense of not being involved in the crime. Shubbie contends that the clothes and tools contained in the duffel bag would have corroborated his alibi of doing auto repair work at the time the alleged crime was committed. Since the duffel bag was shown in photos which were admitted into evidence, Shubbie contends the state should have produced the bag at trial.
The United States Supreme Court held in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that upon request the state must produce evidence that is favorable to the accused where it is material to guilt or punishment. A finding of materiality of the evidence is required under Brady. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); State v. Smith, 437 So.2d 252 (La. 1983). When a general request for Brady *1156 material has been made, the failure of the state to disclose exculpatory evidence will not result in reversal of a conviction unless such evidence creates a reasonable doubt as to defendant's guilt that did not otherwise exist. Only then can the defendant complain that nondisclosure deprived him of his due process right to a fair trial. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); State v. Curtis, 384 So.2d 396 (La.1980). As stated by the court in Agurs:
The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.
In the instant case, Shubbie's counsel filed a motion for production of the duffel bag. However, the item was not turned over by the state because it was apparently released when the state released the Hyundai vehicle from its custody. At trial, Deputy Plunkett testified that the green duffel bag was at the scene when the Hyundai was stopped and that it contained some clothes and tools. Exhibit B-5, a picture of the duffel bag by the car, was admitted into evidence.
We find that the defendant has not shown that the state withheld evidence since at least one of the police officers testified that he had seen the bag, and a photograph of it was admitted into evidence. Shubbie had the benefit of arguing the presence of the bag and its contents and his alibi defense to the jury even though the bag itself was not present at trial. We also find that even if the duffel bag had been present, it would not have created a reasonable doubt of Shubbie's innocence in light of the other evidence presented against him at trial. Accordingly, this assignment of error has no merit.

OTHER CRIMES EVIDENCE
Defendant Shubbie contends that the trial court erred in not granting a mistrial after the state mentioned another crime when calling the case for trial. When the state called this case to trial, Shubbie contends the prosecution mentioned two charges, Nos. 68,814A and 68,814B, all in the presence of the entire jury venire. Shubbie contends this action required the court to order a mistrial.
The record indicates that the assistant district attorney simultaneously called Docket Nos. 68,814A and 68,814B for trial. Defense counsel for each of the defendants immediately objected on the basis that the two docket numbers were separate bills of information which had not been consolidated for trial under LSA-C.Cr.P. Art. 706. Defense counsel also argued that the mention of the second docket number was a reference to other crimes committed by the defendants and required a mistrial under LSA-C.Cr.P. Art. 770(2). The trial court correctly ruled that the separate bills of information had not been properly consolidated for trial and therefore should be tried separately. The trial court also denied the motion for mistrial because the reference to other alleged crimes was not so prejudicial as to warrant a mistrial. The defendants were subsequently tried and convicted under Docket No. 68,814A.
In State v. Berthelot, 513 So.2d 1228 (La.App. 4th Cir.1987), writ granted in part on other grounds, 516 So.2d 127 (La.1987), the court held that a mistrial was not warranted when the state referred to multiple docket numbers when calling a case for trial. On noting that LSA-C.Cr.P. Art. 770(2) covers remarks made during voir dire, the court stated that this article is not applicable, unless the inference which is made plainly constitutes a comment on other crimes committed or alleged to have *1157 been committed by the defendant. The court then held that the reference to the other docket numbers was not plainly recognizable by the jury and LSA-C.Cr.P. Art. 770(2) was inapplicable. Therefore, the trial court correctly denied the defendants' motion for a mistrial.
In the instant case, we find the rationale of Berthelot persuasive. The calling of two docket numbers was not plainly recognizable by the jury as a reference to other crimes and we can only speculate as to what inferences were drawn by them. Therefore, LSA-C.Cr.P. Art. 770(2) is inapplicable, and the trial court did not err in denying the motion for mistrial. This assignment of error has no merit.

BATSON CHALLENGE
Defendant Shubbie contends that the state was improperly allowed peremptory challenges of black jurors without giving racially neutral explanations for their removal. Shubbie contends the peremptory challenges of Mrs. Jones, Mrs. Wilson, and Mr. Ruffin prevented a larger black presence on the jury. Shubbie contends that the state's reasons for dismissal were pretextual and prevented him from having a racially balanced jury.
Equal protection guarantees that criminal defendants have the right to be tried by a jury selected by nondiscriminatory criteria. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The opinion in Batson was recently summarized in Hernandez v. New York, ___ U.S. ___, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). Under Batson there are three steps in determining whether there has been a race-based exclusion of jurors. First, the defendant must make a prima facie showing that the challenges were based on race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Third, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. Hernandez resolved one recurrent dispute by holding that if the prosecutor states or attempts to state race-neutral reasons, the question of whether the defendant made a prima facie showing becomes moot.
The Hernandez court stated that proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. A neutral explanation means one based on something other than the juror's race. The court ruled that the true issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed race-neutral.
In the instant case, the state exercised its seventh peremptory challenge against Mrs. Jones on the basis that her partiality was in question. She was a sister-in-law of Robert Smith, who had been a former police officer. Robert Smith was convicted by the prosecutor in the instant case for writing illegal traffic tickets and then taking money from the drivers without turning in the tickets.
The state exercised its ninth peremptory challenge against Mrs. Wilson on the basis that her partiality was in question. The reason was that she was living with her brother, Robert Wilson. The prosecutor in this case was also the prosecutor against Robert Wilson, on charges of rape, aggravated burglary, and twelve or thirteen other charges of burglary. That trial was set to begin on the following Monday.
In response to defense counsel's objection, the court found the state was not systematically excluding jurors based on race. It also noted that Mrs. Wilson said she had an uncle who was facing, or recently had faced, criminal charges.
It has been held that a juror who had a brother convicted of armed robbery was properly excluded. State v. Mims, 524 So.2d 526 (La.App. 2d Cir.1988), writ denied, 531 So.2d 267 (La.1988), appeal after remand, 550 So.2d 760 (La.App. 2d Cir. 1989), 566 So.2d 661 (La.App. 2d Cir.1990), writ denied, 569 So.2d 970 (La.1990). It was also proper to exclude a prospective juror because she had two family members *1158 prosecuted by the district attorney, and the prosecutor questioned her impartiality. State v. Otis, 586 So.2d 595 (La.App. 2d Cir.1991), writ granted in part on other grounds, 589 So.2d 487 (La.1991), appeal after remand, 592 So.2d 1 (La.App. 2d Cir. 1991).
The state first challenged Mr. Ruffin for cause because he said he could not convict on circumstantial evidence or on the law of principals. The assistant district attorney also pointed out that under questioning from one of the defense attorneys regarding circumstantial evidence the prospective juror responded that he didn't understand "what we were talking about." Thus, the assistant district attorney argued that Mr. Ruffin had shown an inability to pay sufficient attention to comprehend the legal principles at issue. The court refused the challenge for cause, and the state used a peremptory challenge, advising the court that the reasons were the same as those urged in the challenge for cause.
At least two cases have held that the state may properly exclude a juror who had difficulty in understanding the legal issues involved. State v. Wiley, 513 So.2d 849 (La.App. 2d Cir.1987), writ denied, 522 So.2d 1092 (La.1988); State v. Worthy, 532 So.2d 541 (La.App. 1st Cir.1988), writ denied, 538 So.2d 610 (La.1989).
A reviewing court should generally accord the trial court great discretion in its determination whether there was purposeful discrimination in the prosecutor's exercise of peremptory challenges. State v. Collier, 553 So.2d 815 (La.1989).
In the instant case, we find that there was no purposeful discrimination against blacks by the state when selecting the jury. Four blacks were seated on the jury, and the prosecutor gave valid race-neutral reasons for the exclusion of the other potential black jurors. This assignment of error has no merit.

CONFIDENTIAL INFORMANT
Defendant Shubbie contends the trial court erred in not allowing his counsel to ask a witness if he was the confidential informant. Shubbie asserts that the trial court's refusal to allow him to ask Sammy McClinton if he was the informant effectively denied Shubbie the opportunity to fully confront the state's witnesses. Shubbie contends this was a violation of his Sixth Amendment right to confront his accusers.
Louisiana has a strong public policy in favor of protecting the identity of confidential informants. State v. Davis, 411 So.2d 434 (La.1982); State v. Hall, 549 So.2d 373 (La.App. 2d Cir.1989), writ denied, 556 So.2d 1259 (La.1990). The defendant bears the burden of showing exceptional circumstances which would require divulging a confidential informant's identity, and the trial court has much discretion in deciding whether disclosure is warranted. State v. Oliver, 430 So.2d 650 (La. 1983), cert. denied, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983); State v. Hall, supra. A showing that the informant participated in the crime constitutes exceptional circumstances requiring disclosure. State v. James, 396 So.2d 1281 (La.1981); State v. Humphries, 463 So.2d 804 (La. App. 2d Cir.1985).
In the instant case, defense counsel had full opportunity to question the deputies about the background of the confidential informant, his character, and whether he had been paid. No showing of exceptional circumstances was made which would require disclosure of the confidential informant. We find that the trial court did not abuse its discretion in denying disclosure of the confidential informant. This assignment of error has no merit.

CHAIN OF CUSTODY
Defendant Shubbie contends the trial court erroneously allowed the state's items S-4 through S-28 into evidence. Shubbie contends that the testimony of Deputy Bridges was so confusing, the trial court should have excluded the above evidence. Shubbie contends that there were defects in the chain of custody because certain items were erroneously marked and inventoried. Another item had been totally left off the return of the search warrant. Furthermore, *1159 Deputy Bridges' testimony indicated that he did not specifically recall where each item had been located. For these reasons, Shubbie contends the visual identification was not sufficient to justify the admission of the evidence.
This court held in State v. Collins, 535 So.2d 973 (La.App. 2d Cir.1988), writ granted in part on other grounds, 536 So.2d 1200 (La.1988), that identification of an item of evidence establishes a proper foundation for its admission. Identification can be either by a witness who identifies the evidence in court, or by a chain of custody. A lack of positive identification or a defect in the chain goes to the weight of the evidence rather than admissibility.
In the instant case, Deputy Bridges identified items S-4 through S-14 as coming from the car and items S-15 through S-28 as coming from the tack room. He testified that everything either went directly to the police evidence room or to the crime lab. He said he brought the evidence to the trial, and none of the evidence had been tampered with or altered.
On cross-examination, Deputy Bridges explained that the evidence really wasn't stored at the courthouse. It was stored in a maintenance garage in Benton. As far as Deputy Bridges knew, only Deputies Rick Cowan and Don Rittenberry had access to the garage, and a log was kept of every time anyone took anything into or out of the storage area. However, the log wasn't maintained at the storage facility, it was located at the Sheriff's Office in the courthouse.
We find that the trial court did not err in admitting these items into evidence. Deputy Bridges testified that he had personal knowledge of the items, that he had seized them or seen them where they were seized, and he maintained them for evidence purposes and kept them segregated from other items of evidence. Any inconsistencies in identification of the items would go to the weight of the evidence rather than to its admissibility. Accordingly, this assignment of error has no merit.

EVIDENCE IN FRONT OF JURY
Defendant Shubbie argues that the trial court erred in leaving the physical evidence before the jury during trial. Shubbie contends the evidence was placed within a few feet of the jury and the odor emanating from it was very offensive. Shubbie generally contends that allowing the evidence to remain in front of the jury prejudiced the jury, but fails to argue specifically how prejudice occurred.
In State v. Kirkpatrick, 443 So.2d 546 (La.1983), cert. denied, 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984), the defendant contended the trial court erred in allowing the state to display many items of physical evidence within the jury's view when the state didn't introduce them all. Although the defendant alleged the procedure "served to further inflame the jurors and to influence them," the court found no showing of prejudice.
This matter was totally within the discretion of the trial judge, and the defendant has failed to show any prejudice. There is nothing in the record which would suggest that the jurors were unduly influenced by this evidence. This assignment of error has no merit.

CO-DEFENDANT'S GUILTY PLEA
Defendant Shubbie contends the trial court erred in denying his motion for a mistrial when the state referred to a former co-defendant's case as "being taken care of" in front of the jury during opening arguments. Shubbie contends that the reference improperly inferred that co-defendant Douglas Sepulvado had pled guilty. Shubbie contends this reference to Sepulvado's guilt in turn indicated to the jury that he was guilty. Therefore, Shubbie contends that a mistrial should have been granted.
The former co-defendant in this case was Douglas Sepulvado. The state told the jury during opening argument that although Sepulvado had been in the car when it was stopped and had been arrested with the defendants on trial, he "is not here. He's not before you. His matter *1160 has already been taken care of and he is not of (sic) your consideration although you may hear his name during this trial." Defense counsel for Joseph Reed immediately objected to this statement. The court admonished the jurors not to draw any inference from the statement and to disregard it totally.
LSA-C.Cr.P. Art. 842 provides that if an objection has been made when more than one defendant is on trial, it shall be presumed, unless the contrary appears, that the objection has been made by all the defendants. Therefore, although Shubbie's counsel did not object at trial, we will consider his argument.
In State v. Williams, 307 So.2d 623 (La. 1975), the district attorney mentioned that another person had participated in the burglary for which the defendant was on trial. The explanation was necessary for the jury's understanding of the case. The district attorney did not mention that the other person had pled guilty. The court held that there was no prejudice to the defendant and no basis for a mistrial.
In the instant case, the prosecutor's reference to Douglas Sepulvado was necessary for the jury's understanding of the case and the evidence which was to be introduced. The state did not mention that Sepulvado had pled guilty to any charges and carefully restricted its comments. We find there was no basis for a mistrial and no prejudice to the defendant. This assignment of error has no merit.

AMENDMENT TO BILL OF PARTICULARS
Defendant Shubbie contends the trial court incorrectly allowed the state to amend its answer to the bill of particulars filed by the defendant. Shubbie also asserts that it was error for the trial court to release the witness who was responsible for this amendment to the bill of particulars. Shubbie contends this amendment prejudiced his preparation for the defense of his case.
Initially, we note that defendant Shubbie did not file for a bill of particulars in this case. However, defendant Reed did file for a bill of particulars asking on what items were his fingerprints found and where were those items located. The state filed an answer to the bill of particulars stating that Reed's fingerprints were found on an acetone can in the tack room and a mason jar which was found in the Hyundai. At trial, it was discovered that the state's answer to the bill of particulars had erroneously reversed the positions of the acetone can and the mason jar. After Deputy Bridges testified to the correct location of the items, the state moved to amend its answer to Reed's bill of particulars, and the trial court allowed the amendment.
LSA-C.Cr.P. Art. 488 provides that when there is a variance between the allegations of a bill of particulars and the evidence offered in support thereof the court may order the bill amended in respect to the variance, and then admit the evidence. State v. Robertson, 358 So.2d 931 (La. 1978).
We find that the trial court did not err in allowing the state to amend its answer to the bill of particulars. This amendment did not concern any evidence pertaining to Shubbie. This amendment did not relate to any material facts of the crime which affected Shubbie's preparation for the defense of his case. The amendment to the bill of particulars did not cause any prejudice to defendant Shubbie.
We also note that counsel for Shubbie did not object to the release of Deputy Bridges after he testified for the state. Shubbie never requested that Deputy Bridges be recalled to testify, although Reed's counsel did make such a request because of the amended bill of particulars. Based on this request, an instanter subpoena was issued, but Deputy Bridges never did return to the witness stand. The record does not disclose why he did not return. Counsel for Shubbie had already cross-examined Deputy Bridges on the issues in the case, and any testimony concerning the amendment to the answer to the bill of particulars was irrelevant to Shubbie. No prejudice to defendant Shubbie has been shown regarding the release of the witness *1161 or his failure to return. This assignment of error has no merit.

PRIOR CRIMES
Defendant Shubbie contends the trial court erroneously allowed testimony which indirectly referred to prior crimes of the defendant. Shubbie contends that the trial court should have granted a mistrial after Deputy Cowan testified about the retrieval of fingerprints from the sheriff's "corrections division." Shubbie asserts that this reference indirectly referred to prior crimes committed by him and, therefore, a mistrial should have been granted.
In the jury's presence, Deputy Cowan testified that to compare the latent prints with the defendants' prints, he obtained fingerprint cards "from our corrections division upstairs." Counsel for Reed asked for a side-bar conference and then moved for a mistrial on the ground that Deputy Cowan had made a clear and direct reference to other crimes. The prosecutor said he thought the witness would say "from the identification section." The court found the statement was not a clear reference to other crimes and overruled the objection. Deputy Cowan then testified that the fingerprints were taken from the defendants after their arrest and that he received them from the identification section of the sheriff's department.
A remark about alleged other offenses by a witness is covered by LSA-C.Cr.P. Art. 771. This article states that if an irrelevant or immaterial remark is made within the hearing of the jury and is of such a nature that it might create prejudice against the defendant or the state, the court is to promptly admonish the jury upon the request of the defendant or the state. The article further states that the court may grant a mistrial on motion of the defendant if it is satisfied that an admonition is insufficient to assure the defendant a fair trial.
The statement by Deputy Cowan does not appear to be a reference to other crimes committed by the defendant. The statement did not contain a reference to the time, place or nature of any other crime committed by the defendant. State v. Lepkowski, 316 So.2d 727 (La.1975).
In the instant case, the defense moved for a mistrial and did not seek an admonition. Mistrial is a drastic remedy and should be declared only when unnecessary prejudice results to a defendant. State v. Smith, 430 So.2d 31 (La.1983). The determination of whether prejudice has resulted lies within the sound discretion of the trial court. State v. Smith, supra; State v. Brown, 557 So.2d 1085 (La.App. 2d Cir.1990).
The remark complained of was a very indirect reference to other crimes, and did not mention any details of such crimes. Although the court did not feel an admonishment was necessary, the continued questioning of the witness should have made it clear to the jury that the prints were taken after the defendants were arrested. Thus, the defendant has not shown unnecessary prejudice from the remark made by Deputy Cowan, and we find the trial court did not abuse its discretion in denying the motion for mistrial. This assignment of error has no merit.

MULTIPLE OFFENDER SENTENCING
Defendant Shubbie relies on State v. Lewis, 564 So.2d 765 (La.App. 2d Cir. 1990), to contend that the trial court erred in considering his prior conviction, which was not yet final, in sentencing him as a multiple offender. Shubbie contends that since he was granted an out-of-time appeal, which was still pending at the time he was sentenced for the instant offense, his prior conviction could not have been used for enhanced punishment. Accordingly, Shubbie argues that he should not have been sentenced as a habitual offender.
Defendant Shubbie pled guilty to conspiracy to commit simple robbery on December 4, 1985. This was the predicate offense used to sentence him as an habitual offender in this offense. He was sentenced on February 19, 1986. He did not appeal that conviction, thus it became final. On November 7, 1991, Shubbie was granted an out-of-time appeal on this prior conviction, *1162 and an opinion was rendered on this out-of-time appeal on May 13, 1992. Shubbie was sentenced as a habitual offender for the instant offense on January 10, 1992, while his out-of-time appeal for his prior conviction was still pending.
In State v. Lewis, supra, this court held that a prior conviction must be final before the subsequent offense is committed in order to use the prior conviction to enhance a defendant's sentence. Lewis committed armed robbery in 1988 while his 1987 aggravated battery conviction was pending on appeal. Notwithstanding that the 1987 conviction had been affirmed by the time Lewis was convicted of armed robbery, the court held that the 1987 conviction could not be used for enhancement under LSA-R.S. 15:529.1 because it was not final when the armed robbery was committed.
In State v. Mims, 566 So.2d 661 (La.App. 2d Cir.1990), writ denied, 569 So.2d 970 (La.1990), this court held that the defendant was properly sentenced as a habitual offender where at the time he committed his current offenses, his prior conviction was final because it had not been appealed from, even though an out-of-time appeal of that prior conviction was granted between the defendant's first and second sentencings for his current offenses. The court noted that a conviction is final either because it is not [timely] appealed or it has been affirmed on appeal. The court held that even though Mims' prior conviction was not "affirmed on appeal" until after he was resentenced for his current offenses, the prior conviction was final because it was not appealed from when Mims committed his current offenses. Therefore, no error was found in Mims' sentencing as an habitual offender.
The instant case presents the same situation as Mims, supra. When Shubbie committed the instant offense in January of 1990, his prior conviction for conspiracy to commit simple robbery was final because it had not yet been appealed. That he was later granted an out-of-time appeal on this conviction and that this appeal was still pending when he was sentenced for his current offense are irrelevant facts. Under the rationale of Mims, supra, and Lewis, supra, a defendant's habitual offender status under LSA-R.S. 15:529.1 is determined as of the time the subsequent offense is committed. Because Shubbie's prior conviction was final at the time he committed the instant offense, we find that the trial court did not err when sentencing Shubbie as a habitual offender. This assignment of error has no merit.

ASSIGNMENTS NOT ARGUED
Defendant Shubbie has not briefed or argued his Assignments of Error Nos. 6, 7, 8, 14, 15, 18, 19, 20, 21, 22, and 25. Defendant Dukes has not briefed or argued his Assignments of Error Nos. 3, 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16. Therefore, all of these assignments of error are deemed to be abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); U.R.C.A. 2-12.4.

ERROR PATENT
LSA-C.Cr.P. Art. 930.8(C) provides that at the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record in the instant case shows that the trial court failed to inform defendants Dukes and Shubbie of this prescriptive period. This defect has no bearing on the convictions or sentences and is not ground for reversal or remand for resentencing. The trial court is instructed to send appropriate written notice to defendants Shubbie and Dukes within ten days of the rendition of this opinion and make a note in the transcript that they received the notice. We find nothing else we consider to be error patent.

CONCLUSION
The conviction and sentence of Joseph Reed is reversed, vacated, and set aside. The convictions and sentences of Milton Shubbie and Kenneth Dukes are affirmed.
AFFIRMED IN PART, REVERSED AND VACATED IN PART.

*1163 APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS, HIGHTOWER and VICTORY, JJ.
Rehearing denied.
NOTES
[1] Merriman either did not appeal or has appealed separately.
[2] This information comes from the transcript for the motion to suppress hearing, which was previously before this court in 22,324-KW.