582 So.2d 915 (1991)
STATE of Louisiana, Appellee,
v.
Willie JACKSON, a/k/a John Jackson, Appellant.
No. 22490-KA.
Court of Appeal of Louisiana, Second Circuit.
June 19, 1991.
*916 Herman L. Lawson, Mansfield, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, William R. Jones, Dist. Atty., Robert E. Bethard, Asst. Dist. Atty., Coushatta, for appellee.
Before MARVIN, C.J., and NORRIS and LINDSAY, JJ.
MARVIN, Chief Judge.
Willie Jackson, a/k/a John Jackson, appeals his conviction by jury of theft, claiming the state's circumstantial evidence that he took $8,050 from a locked desk drawer in an office at the Piggly Wiggly supermarket in Coushatta is insufficient to support the conviction under LRS 15:438 and Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). No errors are assigned concerning his 10-year sentence.
We affirm the conviction and amend the sentence to correct two patent sentencing errors.

*917 FACTS
The theft occurred on August 3, 1989, the time of the month when many customers cashed social security checks or paychecks in the Piggly Wiggly store. About 11 a.m., one of the store owners, Mrs. Coffey, obtained $8,850 in cash from the bank for use in the store. The other store owner, Mr. Belcher, Mrs. Coffey's brother, took $800 from the bank bag to the cash registers, leaving $8,050 in the bank bag. Mrs. Coffey put the bag in the lower of two drawers on the left side of the desk in Mr. Belcher's office. For many years cash had been kept in that drawer for use as needed. The cash drawer of the desk, secured by a hasp, was padlocked. Other desk drawers were not locked. Only Mr. Belcher, Mrs. Coffey and her son, David Coffey, the store's assistant manager, had a key to the padlock.
Mr. Belcher's office is at the end of a hallway in the office area of the store that is separated from the public area by four steps leading to the hallway. There is no door at the entrance to the hallway. The doors to each of the three offices, belonging to Mr. Belcher, Mrs. Coffey and Elaine Miller, a store employee, were usually open and unlocked.
Mrs. Coffey put the money in the cash drawer in Mr. Belcher's office and locked the padlock around 11:30 a.m. She went to lunch about 11:45 a.m., returning at 1:15 p.m. No store employee remained in the office area while Mrs. Coffey was at lunch. Both Mr. Belcher and David Coffey were working in the public area of the store. During Mrs. Coffey's lunch break, David Coffey briefly entered the office area to get something for a customer. He noticed a tall black man wearing dark pants, a light-colored shirt and a dark tie standing a few feet from the entrance to the office area. Believing the man was a salesman, Coffey returned to the front of the store without speaking. He explained that he did not have time to talk to salesmen during the busy lunch period.
Mrs. Coffey returned from lunch, intending to obtain more cash from the cash drawer of the desk for the cash registers. She found that her padlock key was missing from her desk drawer. She went into Mr. Belcher's office and saw that the padlock on the cash drawer was still locked but the drawer above it was partially open. She got her son's key to the padlock, opened the cash drawer, and found the bank bag missing. Police were called.
David Coffey told police about the man he had seen near the office area during the lunch period. He could only describe the clothes the man wore. Coffey testified the man's appearance was unusual because his shirttail was out and he wore a necktie. The police reduced Coffey's statement to them to writing but did not mention the man's shirttail being out.
A worker at a nearby Exxon station, J.L. Wilson, told police he had seen a tall, slim, black man wearing a white shirt, a dark tie and light-colored dress pants walking across the road from the gas station toward Highway 71 around noon. Wilson testified the man caught his attention because he was "dressed all up with his shirttail out and [had] a necktie on." He said he told the police about the man's shirttail being out. The police did not include this in the statement of Wilson that they reduced to writing and he signed.
After the theft was reported, Richard Beighley, a criminalist and fingerprint expert with the North Louisiana Crime Lab, dusted the metal desk in Mr. Belcher's office. He lifted latent prints from several areas of the top drawer above the locked cash drawer. When Beighley removed the upper drawer to dust it for prints, he observed that there was nothing separating the upper and lower drawers, so that access to the lower, locked drawer could be gained simply by removing the upper, unlocked drawer from the desk.
Among the prints that Beighley lifted from the upper desk drawer were the fingerprints of two store employees, David Coffey and Christie Longino, and defendant Jackson. Other prints that were lifted could not be positively identified. Jackson's prints were found on the bottom surface of the upper drawer that was removed *918 from the desk to gain access to the cash drawer.
The expert witnesses agreed that the presence of Jackson's fingerprints on the drawer proved only that he touched the drawer at some time since the surface was last washed or cleaned. The desk had been in Mr. Belcher's office for about 15 years. No one was asked at trial whether or when the desk or the underside of the top drawer had been wiped or cleaned.
In a photographic lineup before trial and in court during trial, Wilson, the gas station worker, identified Jackson as the man he saw walking "right across the road" from the station around noon on the day of the theft.[1]
David Coffey was not asked to view the photo lineup or to make an in-court identification. His description of the man's clothing, however, was consistent with Wilson's.
Wilson, Coffey, and the store owners testified that they had never seen Jackson in or around the store before the day of the theft. Mrs. Coffey and Mr. Belcher testified that they did not give Jackson permission to enter Mr. Belcher's office, open his desk drawers, or take money from the cash drawer.
No physical evidence linking Jackson with the theft, such as the money or the padlock key, was in his possession when he was arrested about a week after the theft. Jackson did not testify or present a defense.

SUFFICIENCY OF EVIDENCE
Jackson argues that the state's evidence does not exclude the reasonable hypothesis that someone else, perhaps a store employee, took the money either before or after Jackson's fingerprints were innocently placed on the desk drawer.
A defendant's fingerprint on an object associated with a crime such as theft is direct evidence that the defendant touched the object at some time and is circumstantial evidence that he touched it at the time of the offense. State v. Wade, 467 So.2d 1191 (La.App.2d Cir.1985). When the state uses the fingerprint as circumstantial evidence of guilt, it must exclude any reasonable hypothesis that the defendant touched the object at some time other than the time of the offense. State v. Davenport, 445 So.2d 1190 (La.1984); State v. Wade, supra.
Davenport was convicted of attempted simple burglary of an inhabited dwelling. Wade was convicted of simple burglary for taking two rifles from a pickup truck. The rifles were never recovered. In both cases, the respective evidence that the defendant's fingerprints were found at or near the point of the unauthorized entry was found legally sufficient to convict because there was no evidence that Davenport had been on the premises or that Wade had touched the truck window other than at the time of the respective offense. Under such circumstances, the possibility that the respective defendant's fingerprints may have been placed at the crime scene innocently and at some other time was not found to be a reasonable hypothesis of innocence under LRS 15:438 and Jackson v. Virginia, supra.
Taken in the light that most favorably supports the jury verdict, the evidence shows that around noon on the day of the theft Jackson was seen within walking distance of the Piggly Wiggly store and was seen standing near the entrance to the office area of the store, which was then unoccupied. The theft occurred during that period, when all store employees were either at lunch or working in public areas of the store. Jackson's fingerprints were found on the bottom surface of the upper *919 drawer that was removed from the desk to gain access to the locked cash drawer. The desk was not accessible to the general public. Jackson had not been seen in or around the store before that day and had never been authorized to enter the office area. The underside of the top drawer would not logically have been accessible to a casual visitor in Belcher's office.
The jury obviously rejected, as unreasonable, Jackson's hypothesis that his fingerprints were placed on the bottom surface of the desk drawer innocently and at some time other than the time of the theft. The totality of the evidence supports the jury's decision in this respect, which is reasonable. The evidence is legally sufficient to support the conviction. See and compare State v. Jackson, 550 So.2d 680 (La.App.2d Cir.1989), State v. Davenport and State v. Wade, both cited supra.

ERRORS PATENT
According to the court minutes of Jackson's sentencing, the court ordered that he "must make restitution to the victim before parole can be considered" when it imposed the 10-year hard labor sentence. The court may order restitution as a condition of probation when it suspends a sentence, but may not order restitution as a prerequisite for, or a condition of, parole when it imposes a sentence of imprisonment. State v. Fluitt, 482 So.2d 906 (La. App.2d Cir.1986); State v. Volentine, 565 So.2d 511 (La.App.2d Cir.1990). A sentence that orders restitution as a condition of parole is patently erroneous and illegal in that respect. State v. Savoie, 448 So.2d 129 (La.App. 1st Cir.1984), writ denied; State v. Volentine, supra.
We vacate the portion of Jackson's sentence that orders restitution as a prerequisite for parole consideration, without remanding for resentencing, because Jackson has already received the maximum term of imprisonment under LRS 14:67 and the illegal portion of the sentence can be corrected without the exercise of sentencing discretion. CCrP Art. 882; State v. Fraser, 484 So.2d 122 (La.1986).
The court minutes do not reflect that Jackson was given credit for the six months or so that he served in the parish jail, according to the PSI, from his August 1989 arrest for this offense until sentencing in February 1990. Failure to give credit for time served, which is mandated by CCrP Art. 880, is error patent and may be corrected by an appellate court under Art. 882 without remanding for resentencing. State v. Trahan, 520 So.2d 789 (La.App.3d Cir.1987), writ denied; State v. Sweet, 575 So.2d 937 (La.App. 2d Cir.1991).
The PSI shows that Jackson had other charges pending in Red River and Bossier Parishes, and in Texas, while he was in jail awaiting trial and sentencing for this offense. He is entitled to credit for time served against the sentence for this offense if the time he served before the imposition of this sentence has not been credited against any sentence he may have received for the other pending charges.

DECREE
We affirm Jackson's conviction and amend his sentence to delete the restitution requirement and to give him credit for time served that has not been credited against any other sentence.
CONVICTION AFFIRMED; SENTENCE AMENDED.
NOTES
[1] In his pro se assignments and brief, Jackson claims the photographic lineup was unduly suggestive and that Wilson's in-court identification was based on the suggestive lineup. Jackson did not file a motion to suppress the out-of court identification and objected to it at trial only on the ground that it was not mentioned in the state's opening statement. That objection was overruled and is not before us. Jackson did not object to the in-court identification. Under these circumstances, we do not review his contentions that Wilson's in-court and out-of court identifications should have been excluded from evidence. CCrP Arts. 703 F, 841; State v. Naas, 409 So.2d 535, 547 (La.1981) (on rehearing).