749 So.2d 890 (1999)
STATE of Louisiana, Appellee,
v.
Clen ROLLINS, Appellant.
No. 32,686-KA.
Court of Appeal of Louisiana, Second Circuit.
December 22, 1999.
Rehearing Denied January 20, 2000.
*892 Paul Henry Kidd, Monroe, Dennis G. Stewart, Rayville, Counsel for Appellant.
Richard Ieyoub, Attorney General, Jeffrey D. Jeter, Assistant Attorney General, William R. Coenen, Jr., District Attorney, Johnny R. Boothe, Assistant District Attorney, Counsel for Appellee.
Before BROWN, WILLIAMS and STEWART, JJ.
BROWN, J.
Defendant, Clen Rollins, was charged by bill of information with eight counts of Medicaid fraud. After a lengthy and hotly disputed trial, a jury found defendant guilty on six counts and acquitted him of the other two counts. Defendant was sentenced to two years at hard labor on each of the six counts, with the first three sentences to be served consecutively and the second three to be served concurrently. The trial court also ordered defendant to pay restitution to the state as a condition of parole upon his release. Defendant has appealed both his convictions and sentences.

Factual Background
In November 1992, defendant started a non-emergency medical transportation business in Winnsboro, Louisiana, and enrolled with the State of Louisiana, Department of Health and Human Services, which entitled him to be paid through the state's Medicaid program for approved transports. Defendant, who professes to have limited reading and writing skills, hired his cousin, Roxie Shaw, as his secretary/office manager.
In 1993, the state noticed that defendant's billings were much higher than other transportation providers in his area. Following an investigation, defendant was charged with eight counts of Medicaid fraud for billing claims for trips not made as well as claims involving inflated mileage.
After a week-long trial, the jury found defendant guilty of six counts and acquitted him of the other two counts. Defendant was thereafter sentenced to two years at hard labor on each of the six counts, with the first three sentences to be served consecutively and the second three to be served concurrently. Also, upon his release from prison, defendant was ordered to pay restitution to the state.

*893 Discussion

Sufficiency of the Evidence
Defendant has raised several trial errors as well as alleging insufficiency of the evidence. When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first address the sufficiency of the evidence. State v. Hearold, 603 So.2d 731 (La.1992); State v. Beason, 26,725 (La.App.2d Cir.04/07/95), 653 So.2d 1274, writ denied, 95-1388 (La.10/27/95), 661 So.2d 1359.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.05/08/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760.
La. R.S. 14:70.1 provides that Medicaid fraud is the act of any person who, with intent to defraud the state through any medical assistance program created under the federal Social Security Act and administered by the Department of Health and Hospitals: (1) presents for allowance or payment any false or fraudulent claim for furnishing services or merchandise; or (2) knowingly submits false information for the purpose of obtaining greater compensation than that to which he is legally entitled for furnishing services or merchandise; or (3) knowingly submits false information for the purpose of obtaining authorization for furnishing services or merchandise.
We first note that defendant's argument that the state's transportation program was not proven to be a medical assistance program created by the Social Security Act is meritless. The record contains uncontradicted testimony from an employee of the state program that it was in fact created by the Social Security Act.
To prove that defendant committed medicaid fraud, the state had to show beyond a reasonable doubt that defendant intentionally submitted false claims for services which he did not render and/or that he intended to commit fraud when he submitted incorrect mileage on those claims. Medicaid fraud is a specific intent crime. Because specific intent is a state of mind, it need not be proved as fact, but may be inferred from the circumstances of the transaction and the actions of the accused. State v. Romero, 574 So.2d 330 (La.1990); State v. McDermitt, 406 So.2d 195 (La.1981).
The record indicates that the trips involving Sheila Taylor (Count One), Shirley McDaniel (Count Two), Lisa Higgins (Count Three), DeShun McDaniel (Count Four), and Gerry Banks (Count Six) were in fact made by defendant, just not in December 1992 as reflected in defendant's claims filed with the state. Defendant worked part-time as a transportation driver *894 for Lily Carter, another provider, in November 1992. On November 13, 1992, defendant was approved to begin providing transportation services under the state's Medicaid program. However, defendant did not begin his own business until the beginning of December 1992. Ms. Carter further testified that defendant was providing transportation in his approved vehicle during November. The evidence shows that the trips involving Sheila Taylor, Shirley McDaniel, Lisa Higgins, DeShun McDaniel and Gerry Banks occurred in November 1992. Ms. Carter testified that these Medicaid recipients were not her clients. However, the evidence indicates that the five trips were approved by the state and assigned to Ms. Carter's provider number for authorization and billing purposes. Ms. Shaw testified that she and defendant later changed the claim forms to show that defendant carried the patients. Ms. Shaw stated that at defendant's request, she called the state dispatching center and obtained new authorization numbers for the five trips by pretending that she was the patient needing transport. Thereafter, she and defendant submitted the claims as if the trips had been made in December 1992.
While the state did show that the five trips were authorized under Ms. Carter's provider number and then later new authorizations were obtained by defendant for billing purposes, it was Ms. Carter's testimony that the patients were defendant's clients, even though at the time of their transport, defendant was driving "for her." Thus, the transportation services were actually rendered to the individuals by defendant and he was the only provider paid for the services. The state thus failed to prove that these transport claims were double-billed.
On the other hand, the state presented evidence that the mileage on all six claim forms was not the actual mileage driven by defendant, but was grossly inflated and thus constituted the filing of false information to obtain more compensation than that to which he was legally entitled. We find that the evidence was sufficient for the jury to have concluded that defendant had the specific intent to seek greater compensation than he was due. On cross-examination, defendant conceded his awareness that the mileage for a round trip from Winnsboro to Columbia was not 180 miles as he instructed Ms. Shaw to bill the state, but only 60 miles. He also admitted that a round trip from Winnsboro to Monroe, rather than being 268 miles, was in fact 80 miles. Ms. Shaw testified she simply billed the state for mileage as instructed by defendant. According to Ms. Shaw, she billed the state incorrectly for mileage until she went to a seminar in Monroe and learned differently. At that seminar, the state explained the proper procedure for billing mileage. Although defendant claims to be a barely literate, simple man just trying to make a living, the record fully supports the jury's finding that he intended to defraud the state by inflating the mileage on the claims which form the basis of Counts One, Two, Three, Four and Six.
Furthermore, we also find that there was sufficient evidence as to Count Seven for the jury to find beyond a reasonable doubt that defendant intentionally filed a false or fraudulent claim.
As to Count Seven, which involved a claim for transporting Mary Shaw from Winnsboro to Monroe and back for an appointment with Dr. Patterson, there was sufficient evidence for the jury to conclude that defendant did not in fact render such a service. Roxie Shaw testified that her aunt, Mary Shaw, drove herself to Dr. Patterson's office in Monroe and that she had the clinic stamp the verification form indicating that she had been to the clinic. She then returned the form to Roxie Shaw. Mary Shaw failed to sign the verification form, so defendant had Roxie Shaw sign it prior to submitting it to the state. Inasmuch as defendant himself was the only state-approved driver for his transport service, there was sufficient evidence *895 for the jury to conclude that defendant would have known that he did not transport Mary Shaw to Monroe for her appointment with Dr. Patterson. The jury could have found beyond a reasonable doubt that defendant knew that he did not transport Mary Shaw and that the claim he submitted was clearly for services not rendered.
Therefore, this assignment of error is meritless.

Evidentiary Issues
Defendant first asserts that the trial court erred in allowing the introduction of inadmissible "other crimes" evidence.
Defendant admits that the state gave him notice that they would offer evidence of other criminal activity which occurred during the period from December 3, 1992 to December 11, 1992, but contends that they did not give him timely notice of their intent to introduce other crimes evidence for the periods of time between December 22-24, 1992 and January 4-5, 1993. The record, however, reflects that at the Prieur hearing immediately prior to trial, the state gave defendant notice that they would also present evidence of criminal activity for these additional dates. Nonetheless, on appeal defendant argues that the trial court erred when it allowed this evidence of which he was not given advance notice.
The state asserts that defendant did not request notice of the other crimes evidence as required by La. C.E. art. 404(B); notwithstanding this omission, however, it gave him notice. The state also argues that the other crimes evidence that it presented relating to the December 22-24, 1992 and January 4-5, 1993 time frames was res gestae and therefore no notice was required.
First, we note that the disputed evidence was not res gestae because it was not part of the charged offenses. Therefore, La. C.E. art. 404(B) is applicable, which requires that defendant request notice of the state's intent to use other crimes evidence. Contrary to the state's argument, defendant did request notice in his discovery requests. Therefore, the requirement set forth in La. C.E. art. 404(B) was met and the state was bound to give defendant notice of all other crimes evidence it intended to introduce at trial.
Defendant admits that he received notice of the December 3-11, 1992 time frame. Defendant also concedes that the state gave him notice of the evidence involving the December 22-24, 1992 and January 4-5, 1993 time periods as well. However, defendant complains that this notice was given immediately prior to trial. At that time, defendant objected and the trial court ruled the evidence admissible.
A trial court's ruling on the admissibility of other crimes evidence will not be overturned absent an abuse of discretion. State v. Scales, 93-2003 (La.05/22/96), 655 So.2d 1326, U.S. cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996); State v. Blackwell, 30,281 (La. App.2d Cir.11/10/97), 701 So.2d 1389, writ denied, 97-3073 (La.02/13/98), 709 So.2d 755. Defendant presented no evidence that the trial court abused its discretion. He simply argued that the notice was not timely. There was no showing that defendant's defense strategy would have changed or that he would have rebutted the evidence had he been told in advance of the additional evidence. We cannot say that the trial court abused its discretion.
Furthermore, even if the trial court did err in allowing the evidence because the state's notice was untimely, it was harmless error. An error is harmless if the verdict rendered was surely unattributable to the error. La.C.Cr.P. art. 921; State v. Taylor, 93-2201 (La.02/28/96), 669 So.2d 364, U.S. cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996). The other crimes evidence relating to the December 22-24, 1992 and January 4-5, 1993 time frames was cumulative. The state presented evidence that defendant was billing the state for more mileage than *896 was physically possible for a one-driver, one-vehicle operation. The state further showed that defendant billed the state between 1,000 and 2,000 miles per day during the December 3-11, 1992 time period. This is the same type of evidence which the state presented for the dates of December 22-24, 1992 and January 4-5, 1993. There was nothing new in the disputed evidence. This assignment of error lacks merit.
Defendant also argues that the trial court erred in refusing to allow him to introduce evidence.
Specifically, defendant contends that the trial court erred by not allowing him to present evidence in rebuttal to the other crimes evidence presented by the state. December 1992 was the period in which the state claimed the fraudulent activities occurred. When defendant attempted to present billing statements for July 1993, the state objected based on relevance because the time frame was well after the period in which the offenses occurred. The trial court refused to allow the evidence. Defendant argues that this excluded evidence was relevant.
A trial court's ruling on the relevancy of evidence will not be overturned absent an abuse of discretion. State v. Warren, 28,889 (La.App.2d Cir.12/11/96), 712 So.2d 500. Defendant fails to indicate, however, how billing records for the month of July 1993 could possibly be related to the instant offenses, which occurred some seven months before. Instead, defendant makes conclusory statements in brief that the bills are relevant; however, he does not show what other crimes evidence makes them so. Furthermore, defendant did not proffer evidence as to the bills' relevancy. Clearly, the July 1993 bills sought to be admitted are outside of the time frame from which the charges arise. Therefore, the trial court did not abuse its discretion in prohibiting the 1993 bills from being admitted into evidence. This assignment of error is meritless.
Defendant also takes issue with the trial court's exclusion of evidence of a recent arrest of the state's star witness, defendant's office manager Roxie Shaw. During cross-examination, defense counsel attempted to question Ms. Shaw as to whether she had recently been arrested on drug charges in Lake Charles. The state objected and a lengthy discussion, outside the presence of the jury, ensued. The trial court ruled that this line of questioning was not permissible because it did not concern a previous conviction.
Defendant argues that he should have been allowed to question Ms. Shaw on the arrest because of the potential for possible leverage that the government might have been able to exert over her, citing State v. Rankin, 465 So.2d 679 (La.1985); and State v. Roberson, 448 So.2d 789 (La.App. 2d Cir.1984).
In reviewing the transcript, it is not clear whether an arrest actually occurred. The only thing in the record which suggests that there was in fact an arrest was defendant's comments to the judge that there was an arrest and that he thought it was in Lake Charles. Defendant failed to proffer any evidence once the trial court sustained the state's objection. There is no way to ascertain whether an arrest occurred and if so, in what jurisdiction. More importantly, there is no way to determine what, if any, bias or interest such an arrest might have imparted to the witness. Because defendant failed to proffer Ms. Shaw's testimony on this issue, there is no way for this court to determine what prejudicial effect, if any, the trial court's ruling had on defendant's case. Therefore, error will not be predicated upon the trial court's ruling. La. C.E. art. 103; State v. Searcy, 621 So.2d 83 (La.App. 2d Cir.1993). This assignment of error has no merit.

Motion for Mistrial
According to this assignment of error by defendant, prosecutorial misconduct made it impossible for him to receive *897 a fair trial and the trial court erred in failing to grant a mistrial on this basis. Defendant contends that the state suppressed evidence, engaged in a course of conduct intended to provoke defendant's counsel and acted contemptuously toward the trial court.
The state, however, points out that defendant did not request a mistrial.
La.C.Cr.P. arts. 770, 771 and 775 set forth specific instances of conduct which may warrant the granting of a mistrial. Such a remedy, however, must be requested by the defendant. Without a motion for mistrial, alleged errors cannot be remedied under La.C.Cr.P. art. 771 or 775. State v. Pratt, 26,862 (La.App.2d Cir.04/05/95), 653 So.2d 174, writ denied, 95-1398 (La.11/03/95), 662 So.2d 9; State v. White, 430 So.2d 174 (La.App. 2d Cir. 1983).
Inasmuch as defendant did not request a mistrial, this assignment of error lacks merit.

Motion to Recuse
Defendant next argues that the trial court erred in denying his motion to recuse. Defendant urges that he asserted a factual basis for the motion and that a second judge should have been assigned to hear the motion. In his motion, defendant argued that the trial judge demonstrated an inability to conduct a fair trial. Specifically, defendant asserted:
Significant rulings that demonstrate Judge Roberts' demonstration of philosophical proclivity are: (1) his rulings denying a hearing on other crimes evidence and on the issues surrounding the State's agreement on documentary evidence to be introduced at trial; (2) on his refusal to hold the State to that agreement; and (3) when the State furnished documents during trial that showed defendant did sign some documents, he refused to permit defendant to correct his opening statement to the jury, based on the newly furnished documents.
Defendant further asserted that the trial judge's evidentiary rulings indicated a predisposition to rule in the state's favor.
The state counters by pointing out that defendant did not timely file the motion, arguing that the facts upon which defendant bases his motion occurred almost five days prior to his filing of the motion. According to the state, defendant's failure to immediately file the motion was a fatal procedural error. The state also contends that the grounds set forth in the motion are conclusory, not factual, and that the trial court therefore properly denied the motion without referring it to another judge.
La.C.Cr.P. art. 674 provides in part that a party desiring to recuse a trial judge shall file a written motion assigning the ground(s) for recusation. The motion must be filed immediately after the facts are discovered, but prior to verdict or judgment. Article 674 further provides that if a valid ground for recusation is set forth in the motion, the judge shall either recuse himself or refer the motion for hearing to another judge. The relevant grounds for recusal are set forth in La. C.Cr.P. art. 671(A)(1), which states that the judge shall be recused when he is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial. However, if the trial judge finds that the grounds are not valid, then he can deny the motion without referring it to another judge. State v. Williams, 601 So.2d 1374 (La.1992).
We agree with the state that defendant's motion to recuse was untimely filed. Defendant waited seven trial days after the grounds allegedly occurred. On April 20, 1998, defendant told the court that he would be filing a motion to recuse and drafted the motion that day. Defendant even faxed a copy of the motion to the state several days prior to filing it on April 27, 1998. At the time of the motion, defendant told the court that he had drafted the *898 motion several days before but had not filed it. A motion for recusal must be filed immediately after the facts are discovered. La.C.Cr.P. art. 674. Accordingly, defendant's motion was tardy and we find no error in the trial court's denial of the motion to recuse.
However, even if this court were to find that the motion was timely filed, defendant still failed to present a valid ground and specific facts in his motion. Trial judges are presumed to be impartial. Defendant had to provide specific facts in support of a valid ground for recusal. Mere conclusory allegations will not support a motion to recuse a judge. State v. Small, 29,137 (La.App.2d Cir. 04/02/97), 693 So.2d 180. In his motion, defendant claimed that several rulings showed the trial court's inability to conduct a fair and impartial trial. Defendant, however, failed to point to specific facts as to why these rulings were valid grounds for recusal. Defendant presented no evidence that these were anything other than ordinary evidentiary rulings. Therefore, the trial court did not err in failing to refer the matter to another judge for a hearing. This assignment of error is without merit.

Jury Charge
The trial court failed to give an instruction on criminal intent. Prior to the jury retiring to deliberate, the trial court gave the omitted instruction. The trial court is allowed to give jury instructions which are inadvertently omitted. In State v. McMahon, 391 So.2d 1120 (La.1980), the trial court left out an instruction and several hours later, recalled the jury and gave them the omitted instruction. In State v. McMahon, the court held that the trial judge's inadvertent error in omitting an instruction which was later given did not constitute prejudicial error.
This is precisely what occurred in the instant case. The trial court gave the state and defendant a packet of jury instructions. Included in this packet was the omitted instruction on criminal intent. The trial court, upon realizing its error, read the omitted instruction to the jury. Defendant has neither shown prejudice, nor error on the part of the trial court. This assignment is without merit.

Excessive Sentence
We will first consider whether the trial court erred in considering defendant as a second felony offender. When an individual receives a full executive pardon by the governor upon recommendation of the Department of Corrections, he is restored to the status of innocence. La. Const. art. 4, § 5(E)(1); State v. Childers, 197 La. 715, 2 So.2d 189 (1941); State v. Lee, 171 La. 744, 132 So. 219 (1931).
In State v. Adams, 355 So.2d 917 (La. 1978), the court held that a full pardon by the governor would preclude the use of a pardoned offense to enhance punishment, while the automatic first offender pardon established by La. Const. art. 4, § 5(E)(1) would not. See State v. Riser, 30,201 (La. App.2d Cir.12/12/97), 704 So.2d 946.
In the instant case, notwithstanding defendant's argument to the contrary, he did not prove that he had a governor's pardon. The pre-sentence investigation report indicates that defendant obtained a pardon from then Governor Edwin Edwards. Defendant was on active probation status when he received his pardon. One might infer from this that defendant had not completed his sentence when pardoned and might have thus received a governor's pardon rather than an automatic pardon. However, we note again that defendant did not show that he received a governor's pardon. Therefore, the trial court did not err when it considered the prior conviction in sentencing defendant.
Defendant claims that consecutive sentences are excessive because the offenses were part of a common scheme or plan.
La.C.Cr.P. art. 883 provides that:

*899 If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run consecutively. (emphasis added).
It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Jackson, 30,473 (La.App.2d Cir.05/13/98), 714 So.2d 87, writ denied, 98-1778 (La.11/06/98), 727 So.2d 444; State v. Coates, 27,287 (La.App.2d Cir.09/27/95), 661 So.2d 571, writ denied, 95-2613 (La.02/28/96), 668 So.2d 365.
Concurrent sentences arising out of a single cause of conduct are not mandatory, State v. Jackson, supra; State v. Pickett, 628 So.2d 1333 (La.App. 2d Cir.1993), writ denied, 94-0348 (La.05/20/94), 637 So.2d 476; State v. Nelson, 467 So.2d 1159 (La.App. 2d Cir.1985), and consecutive sentences under these circumstances are not necessarily excessive. State v. Ortego, 382 So.2d 921 (La.1980), U.S. cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Williams, 445 So.2d 1171 (La.1984); State v. Jackson, supra; State v. Mills, 505 So.2d 933 (La.App. 2d Cir.1987), writ denied, 508 So.2d 65 (La.1987).
When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. State v. Green, 614 So.2d 758 (La.App. 2d Cir.1993).
La. R.S. 14:70.1(B) provides that:
Whoever commits the crime of Medicaid fraud shall be imprisoned, with or without hard labor, for not more than five years, or may be fined not more than twenty thousand dollars, or both. A sentence of at least one year of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence if the loss to the state is in excess of twenty-five thousand dollars.
The court made the following specific findings in sentencing defendant to two years imprisonment for each of the six counts, with the first three sentences to be served consecutively and the second three terms to be served concurrently, for a total of six years: there was undue risk that defendant would commit another crime while on probation; defendant was in need of correctional treatment; a lesser sentence would deprecate the seriousness of the crime; defendant is a second felony offender; this was a major economic crime; restitution was not an option; no remorse had been shown by defendant; and, defendant is an intelligent, 56-year-old man in declining health.
Under the facts and circumstances of this case, particularly considering the degree of economic harm sustained by the state and the fact that defendant's six-year sentence for all six counts is only one year more than the five-year term that could have been imposed on a single count, we cannot say that defendant's sentence is either grossly out of proportion to the seriousness of the offenses or nothing more than a purposeless and needless infliction of pain and suffering. This assignment of error lacks merit.

Error Patent
The trial court further ordered that as a condition of parole, defendant pay $69,000.48 in restitution.
The trial court was without authority to impose restitution as a condition of parole. Accordingly, the court's order imposing restitution as a condition of parole is vacated. State v. Jackson, 582 So.2d 915 (La. App. 2d Cir.1991); State v. Fluitt, 482 So.2d 906 (La.App. 2d Cir.1986).

*900 Conclusion

In accordance with the above reasons, defendant's convictions are AFFIRMED and his sentences AMENDED to delete the requirement of restitution as a condition of parole.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, CARAWAY, and DREW, JJ.
Rehearing denied.